YOUNG v. KANSAS CITY, Appellant.

Division Two, December 12, 1899.

1. State Courts: FELONIES. All courts in Missouri which have jurisdiction to try felonies of whatever grade, are State courts.

2. ———: OFFICIAL STENOGRAPHER: SALARY. The Legislature has the constitutional authority to require the salary of the stenographic reporter or other official of a State court in cities of 100,000 inhabitants, to be paid out of the city's treasury. And such requirement is not in violation of the chartered rights of such city.

3. ———: ———: ———: COUNTY'S BURDEN. It is not for the courts to say that a part of the burden of such salary should be paid out of the county treasury. The law being constitutional which requires the entire salary to be paid out of the city's treasury, its expediency will not be considered by the courts.

4. ———: KANSAS CITY: SUBJECT TO STATE LAWS. Although Kansas
City's municipal government has been organized under a special
freeholders' charter in pursuance to a general enabling provision of
the Constitution, yet that city is still a part of the State and subject
to its Constitution and laws and liable as other subdivisions of the
State to the burdens of the State government, including that of the
State courts.

5. ———: PROVISION FOR. The duty of providing courts of justice is
a governmental function of the State alone, and does not belong to a
city.

*Appeal from Jackson Circuit Court.*—HON. EDWARD P.
GATES, Judge.

AFFIRMED.

R. B. MIDDLEBROOK for appellant.

(1) Sections 8252 and 8253, R. S. 1889, are uncon-
stitutional and void, being in violation of sec. 53, art. III,
Constitution of Missouri, which prohibits the enactment of
any local or special laws regulating the affairs of cities or
creating offices or prescribing powers and duties of officers in
cities. The act purports to apply to cities "having a popula-
tion of over one hundred thousand inhabitants" and to courts
"having jurisdiction in cases of felony," and section 8 (being
an emergency clause) shows that a large number of causes
are "now pending" in the criminal courts and that the evidence
is voluminous, etc. All of which provisions indisputably
point to the conclusion that the legislative intent was directed
towards the criminal court of the city of St. Louis. No
emergency then existed in other places, for there was no other
place at that time which had a population of over one hundred
thousand inhabitants in the State. Neither was there at that
time any city in the State except St. Louis, which had a
criminal court with jurisdiction in cases of felony. State ex
rel. v. County Court, 89 Mo. 237; Murnane v. St. Louis, 123
Mo. 479; St. Louis v. Dorr, 145 Mo. 466. (2) If this act
of the Legislature, referring to the method of paying the

stenographer of the criminal court of Jackson county merely on the presentation of a certificate issued to him by the clerk is to prevail, then all the safeguards thrown around the appropriation and disbursement of city money embodied in the Kansas City charter are of no avail and are *pro tanto* repealed or amended. The city charter can not be amended in any such way. Such was the ruling of this court in the following cases: Kansas City v. Scarritt, 127 Mo. 642; Kansas City v. Ward, 134 Mo. 172; Kansas City v. Marsh Oil Co., 140 Mo. 458; St. Louis v. Dorr, 145 Mo. 466.

FRANK TITUS for respondent.

(1) This case on its merits is governed by the same law, sections 8252 and 8253, R. S. 1889, which statute has been considered by this court in State ex rel. v. Wofford, 121 Mo. 61. (2) The contention of appellant is absurd, that a general law enacted by the legislature eighteen years prior to the existence of a municipal charter is *ipso facto* repealed and becomes violative of the State Constitution if such charter is impliedly inconsistent with it. Such charters are required to be subject to the general law. This court has expressly decided that Kansas City is in no sense a political subdivision of the State; that is to say, that no political or governing powers adhere to it simply from the privilege given the inhabitants to frame the charter or scheme of local administration. Being merely a territorial division of the State, the city government is *pro tanto* an agency of the State, and that the city should be compelled to pay a stenographer of a court whose sessions are mostly held in such city and the bulk of whose business arises in such city, is not only in the line of good law, but good sense as well.

GANTT, P. J.—This is an action by plaintiff for his salary for the months of June, July, August, September, Octo-

ber, November and December, 1894, at the rate of one hundred and fifty dollars per month, aggregating $1,050, and six per cent interest thereon from the date of his demand of the city treasurer and his refusal to pay the same.

The petition avers that Kansas City was at the times mentioned and is now a city of over one hundred thousand inhabitants and that the criminal court of Jackson county was, at the dates mentioned, to wit, throughout the year 1894, a court duly created by the laws of Missouri with jurisdiction to hear and determine cases of felony and by law was required to hold and did hold three terms of court each year in Kansas City, the defendant herein.

Plaintiff further alleged that on June 1, 1894, he was duly appointed by said criminal court stenographic reporter for said criminal court for and at the terms aforesaid by virtue of his said appointment; that he duly qualified and performed his duties as such stenographer and by virtue of the law creating his office he was entitled to receive of and from Kansas City a salary of one hundred and fifty dollars per month during the term of his employment. That he served as such stenographer for said court during the months of June, July, August, September, October, November and December, 1894, and his salary for said months was duly certified by the clerk of said court and was by plaintiff presented to the treasurer of Kansas City for payment and payment was refused.

Kansas City challenges and denies the constitutionality of article V of chapter 153 of the Revised Statutes of 1889, under which plaintiff was appointed and by virtue of which his salary is fixed, and asked the circuit court to instruct that said law was unconstitutional and void as to Kansas City, which declaration the court refused and gave judgment for plaintiff.

In State ex rel. Martin v. The Hon. John W. Wofford, Judge of the Criminal Court of Jackson County (121 Mo. 61), this court held that the Act of March 19, 1881, afterwards incorporated into the Revised Statutes of 1889 under

the title of article V of chapter 153, applied to Kansas City, and the criminal court of Jackson county; that it was a general law and constitutional.

In that case it was urged that it would do violence to the ordinary signification of language to speak of said court as "a court in a city of one hundred thousand inhabitants;" but we answered then, as we answer now, that all courts in this State which have jurisdiction to try felonies of whatever grade are State courts. "They are not the creatures of municipal government or control, and when one of these courts is appointed by law to hold, and does hold, its regular sessions in a city of one hundred thousand inhabitants, it meets every requirement, verbal or substantial, to bring it within the terms of section 8252, as 'a court having jurisdiction in cases of felony,' 'in cities of one hundred thousand inhabitants.' In no other way can it be in such a city, nor are we at liberty to interpolate into the statute a meaning which would render it obnoxious to a constitutional prohibition."

We have then a court of the State created by law to hear and punish crime in Kansas City. That it was and is entirely competent for the Legislature to require the salary of an official of that court to be paid out of the treasury of Kansas City and be a charge upon the revenues of said city we have no sort of doubt.

In so doing it will not disturb the chartered rights of Kansas City as to her municipal affairs. She is still a part of the State and subject to its Constitution and laws and liable as other subdivisions of the State to support its laws and bear the burdens of government, and on the other hand the State owes her people the same protection that it guarantees every other city and portion of the State. Courts are held by judges and officers of the State for the State and it is incumbent upon the legislature to provide for their maintenance. This power has never been delegated to Kansas City or any other city.

This Act does not seek to amend the charter of Kansas City or interfere in its municipal affairs. The adoption of the

charter is in nowise affected by this statute.    The State in en-acting it was simply exercising the general power over said city that it exercises over every other portion of its territory.

The duty of providing courts of justice is a governmental function of the State alone, and she can require a given locality to provide funds for the support of those courts created for such locality.    [State ex rel. v. Mason, 153 Mo. 23.]

This was held long ago in Hamilton v. St. Louis County Court, 15 Mo. 20, and re-affirmed in State ex rel. v. Field, 119 Mo. loc. cit. 614, in which last case it was said, "We deem it within the power of the Legislature to impose a tax upon a particular subdivision or municipality of the State, when, in its judgment, it is for the benefit of that locality as well as the State at large."

It does not admit of argument that a great city like Kansas City imperatively requires a criminal court.    As to the com-plaint that it imposes a burden that the county should bear in part our answer is that we are dealing with the constitu-tional power of the Legislature now to pass this law.    It is not our province to inquire into its expediency.

However, it does seem that the Legislature recognized that the burden was unequal and in 1895 (Laws 1895, p. 272), amended the law so that since March 18, 1895, the stenog-rapher in Jackson county, by section 8253 as amended, re-ceives his salary from the county treasury.

It follows that article V, chapter 153, Revised Statutes 1889, is not unconstitutional and the circuit court properly held the city liable for plaintiff's salary for the months sued for and its judgment is affirmed.

BURGESS, J., concurs; SHERWOOD, J., absent.