Argued October 4, reversed and writ dismissed October 18, rehearing denied November 15, 1927.

## IN RE APPLICATION OF FRED L. BOALT.

### (260 Pac. 1004.)

**Habeas Corpus—On Habeas Corpus Proceeding, Court may Question Whether Court Issuing Process by Which Petitioner is Held in Custody was Legally Constituted (Or. L., § 642).**

1. Under Section 642, Or. L., implying that prisoner must have been committed by court legally constituted, a court hearing an application for *habeas corpus* may question the legal status of the court issuing the commitment.

**Municipal Corporations—Constitutional Provisions Concerning Initiative and Referendum and Municipal Charters Do not Forbid Legislature from Enacting General Laws Concerning Cities and Towns (Const., Art. XI, § 2, and Art. IV, § 1a, as Amended in 1906).**

2. Constitution, Article IV, Section 1a, as amended in 1906, preserving initiative and referendum powers to voters of municipalities as to local legislation, and Article XI, Section 2, providing that the legislature shall not enact, amend or repeal any charter or act of incorporation for any municipality, city, or town, do not forbid legislature from enacting general laws concerning cities and towns.

**Municipal Corporations—Constitutional Amendments Concerning Initiative and Referendum and Municipal Charters Do not Extend Authority of Municipalities Over Subjects not Properly Local (Const., Art. XI, § 2, and Art. IV, § 1a, as Amended in 1906).**

3. Constitution, Article IV, Section 1a, as amended in 1906, preserving initiative and referendum powers to voters of munici-

---

1. See 12 R. C. L. 1241.

palities as to local legislation, and Article XI, Section 2, forbidding legislature from enacting, amending or repealing municipal charter or act of incorporation, do not extend the authority of a municipality over subjects not properly germane to purposes for which municipal corporations are formed.

**Municipal Corporations—City may not Create Offices, Unless Expressly or Impliedly Authorized by Constitution, Statute, or Charter.**

4. A city has no authority to create offices, where it is not expressly or impliedly so empowered by the Constitution or a statute or charter provision.

**Municipal Corporations—Where Ordinance or Amendment to Charter Abolishes Offices in One Clause, and in Another Reinstates It, Office is not Abolished.**

5. Where a city ordinance or an amendment to a city charter by the people of the city professes to abolish an office in one clause, and in another to reinstate it, the office is not abolished in fact.

**Municipal Corporations—City cannot Abolish Office Created by Legislature' Without Statutory or Constitutional Authority.**

6. City cannot abolish an office created by the legislature unless such action is pursuant to constitutional or statutory power.

**Judges—Duties of Municipal Judge are Municipal When Enforcing City Ordinances, but Governmental When Acting as Ex-officio Justice of Peace or Committing Magistrate.**

7. The duties of a municipal judge in the enforcement of city ordinances are purely municipal, but, when acting as an *ex-officio* justice of the peace or committing magistrate, his duties are governmental, and the state is interested in the performance of them.

**Judges—Justices of the Peace—Municipal Initiative Power Does not Permit City to Abolish Office of Municipal Judge or Forbid His Acting as Ex-officio Justice of Peace, Unless Constitution Plainly Authorizes (Const., Art. IV, § 1a, as Amended in 1906).**

8. Municipal initiative power under Constitution, Article IV, Section 1a, as amended in 1906, will not be presumed to give city power to abolish office of municipal judge or divest him of his power to act as *ex-officio* justice of the peace, unless the language of the amendment plainly warrants such a construction.

**Judges—Justices of the Peace—City Charter, Enacted Under Home Rule Provisions of Constitution Held not to Abolish Office of Municipal Judge or Divest Him of Authority as Justice of Peace (Const., Art. XI, § 2; Sp. Laws 1903, p. 130, §§ 328, 329).**

9. City charter enacted under home rule provisions of Constitution, Article XI, Section 2, and providing that Special Laws of 1903, page 130, Sections 328, 329, creating Municipal Court and empowering judge to act as justice of peace, should remain in effect as ordinances

---

4. See 19 R. C. L. 912.

only, *held* not to abolish office of municipal judge or to divest such officer of authority to act as *ex-officio* justice of the peace.

**Statutes—Statute is to be Construed According to Intention of Lawmakers.**

10. In construing a statute, one of the main canons of construction is to ascertain the intention of the lawmakers.

**Justices of the Peace—City cannot Avoid Duty of Providing for Performance of Duties of Ex-officio Justice of Peace Within Its Limits, According to Legislative Plan.**

11. City *held* to have no authority to divest itself of the duty of providing for the performance of duties of an *ex-officio* justice of the peace within its territorial limits in accordance with general plan enacted by legislature.

**Justices of the Peace—In Dealing With Office of Ex-officio Justice of Peace Within City, Voters are not Enacting Municipal Legislation, but are Dealing With State Interests.**

12. In dealing with the powers and duties of an *ex-officio* justice of the peace within city limits, the voters of a city are not enacting purely local legislation, but are dealing with the interests of the state, and should be governed by the general laws of the state.

**Municipal Corporations—Initiative and Referendum Powers of City and Powers to Enact and Amend Charter are Subject to Limitation of Constitution and Criminal Laws (Const., Art. XI, § 2, and Art. IV, § 1a, as Amended in 1906).**

13. Initiative and referendum powers given to city under Constitution, Article IV, Section 1a, as amended in 1906, and powers under Article XI, Section 2, to enact and amend its charter, are subject to the limitation of the Constitution and criminal laws of the state.

**Justices of the Peace—Municipal Court of Portland is Authorized to Act as Ex-officio Justice of Peace (Sp. Laws 1903, p. 130, §§ 328, 329).**

14. The Municipal Court of the City of Portland is a duly constituted court, authorized to act as an *ex-officio* justice of the peace under Special Laws of 1903, page 130, Sections 328, 329.

**Justices of the Peace—Municipal Judge, Acting as Ex-officio Justice of Peace, is Acting as State Officer.**

15. Governmental functions of municipal judge of city *held* to pertain to sovereignty of the state, and such judge, acting as an *ex-officio* justice of the peace, is acting as a state officer.

**Courts—City cannot Visit Appellate Powers on Courts Without Legislative Authority.**

16. In the absence of legislative authority, a city cannot confer appellate powers on courts.

---

10. See 25 R. C. L. 960.

**Courts—City cannot Without Constitutional or Legislative Authority Divest Court of Powers Conferred by Legislative Enactment.**

17. A city cannot, in the absence of constitutional or legislative authority, divest a court of powers conferred by legislative enactment for enforcing the criminal laws of the state.

**Municipal Corporations—City cannot Legislate on Matters Affecting State Sovereignty Without Express Authority.**

18. City cannot legislate in regard to matters affecting the sovereignty of the state, unless the warrant for such legislation plainly appears in the Constitution or in some state statute.

**Municipal Corporations—State may Enact General Law Governing Municipal Authority in Matters not Strictly Local.**

19. The legislature may enact a general law governing the exercise of municipal authority in matters not strictly local or municipal, but pertaining in part to general welfare of the state, or the exercise of sovereign authority.

**Judges—Legislature Held Competent to Enact Statute Authorizing Cities of Over 200,000 Population to Appoint Additional Municipal Judge (Laws 1925, p. 453).**

20. It was competent for the legislature to enact Laws of 1925, page 453, authorizing cities of over 200,000 population to elect or appoint an additional judge of their municipal courts.

**Statutes—Classification of Cities in Statute, Authorizing Appointment of Additional Municipal Judge According to Their Population, Held Constitutional Whether or not Statute Operated on One City Only (Const., Art. XI, § 2; Laws 1925, p. 453).**

21. Laws of 1925, page 453, authorizing cities of over 200,000 population to appoint additional municipal judge, *held* not repugnant to Constitution, Article XI, Section 2, prohibiting the legislature from enacting, amending or repealing any municipal charter, whether or not such classification, as a matter of fact, applied to one city only.

**Justices of the Peace—Municipal Judge may Act as Ex-officio Justice of Peace, Notwithstanding He is not Elected for Six Years Under Constitutional Provisions (Const., Art. VII, § 1a).**

22. A municipal judge may act as an *ex-officio* justice of the peace notwithstanding he is not elected for six years under Constitution, Article VII, Section 1a, providing that judges of the Supreme and other courts shall be elected for a term of six years.

**Judges—Municipal Judge of City of Portland must be Attorney of Supreme Court.**

23. The municipal judge of the City of Portland must be an attorney of the Supreme Court.

**Judges—Manner of Appointing or Electing Municipal Judge Held Matter of Strictly Local Concern.**

24. Manner of appointing or electing municipal judge who also has powers of *ex-officio* justice of the peace *held* a matter of strictly local concern, in which state is not interested.

Judges—Statute Providing for Additional Municipal Judge Held to Ratify and Confirm Similar Provision of Municipal Law (Laws 1925, p. 453).

25.  Laws of 1925, page 453, providing that common council of city might provide for an additional municipal judge, *held* to ratify and confirm a similar provision of a municipal law, although not using those words.

Constitutional Law—Law Enacted in Furtherance of Police Powers of State, and not Ex Post Facto, or Impairing Obligations of Contract, may Operate Retrospectively.

26.  A law enacted in furtherance of the police powers of the state for the benefit of the community, and not an *ex post facto* law, or one impairing the obligations of contract, may operate retrospectively.

Criminal Law—Commitment of Defendant for Having Defective License Plates Before Municipal Judge Acting as Ex-officio Justice of Peace Held Legal (Laws 1921, p. 722, § 10; Sp. Laws 1903, p. 130, §§ 328, 329; Laws 1925, p. 453; Or. L., §§ 627, 628).

27.  Commitment of defendant under Laws of 1921, page 722, Section 10, for having defective license plates, before a municipal judge acting as *ex-officio* justice of the peace under Special Laws of 1903, page 130, Sections 328, 329, and Laws of 1925, page 453, *held* legal, and petitioner *held* not entitled to *habeas corpus* under Sections 627, 628, Or. L., on contention that municipal judge had no authority to act as *ex-officio* justice of the peace.

---

Constitutional Law, 12 C. J., p. 1086, n. 54, p. 1088, n. 66.
Courts, 15 C. J., p. 1004, n. 41 New.
Habeas Corpus, 29 C. J., p. 40, n. 3.
Justices of the Peace, 35 C. J., p. 453, n. 55, 58, p. 454, n. 62.
Municipal Corporations, 43 C. J., p. 156, n. 73, p. 157, n. 80, p. 158, n. 85 New, p. 167, n. 35, p. 170, n. 78 New, p. 176, n. 1, p. 180, n. 62, 65, p. 181, n. 74, p. 182, n. 83, p. 186, n. 92, p. 216, n. 16, p. 217, n. 17, p. 221, n. 72, p. 269, n. 9, p. 273, n. 50, 51, 52, p. 275, n. 85, 92, 96, p. 598, n. 70, p. 599, n. 72, 73, p. 600, n. 92, p. 601, n. 13, p. 602, n. 26, 27.
Statutes, 36 Cyc., p. 1106, n. 29, p. 1207, n. 14, p. 1208, n. 34.

From Multnomah: WALTER H. EVANS, ROBERT TUCKER, LOUIS P. HEWITT and GEORGE F. SKIPWORTH, Judges.

In Banc.

This is an appeal from the judgment of the Circuit Court of Multnomah County, Oregon, on a writ of *habeas corpus* releasing Fred L. Boalt from the cus-

tody of L. V. Jenkins, Chief of Police of the City of
Portland. Boalt was arrested by his own procure-
ment by a police officer of the City of Portland on a
charge of having defective license plates upon his
automobile in violation of Section 10, Chapter 371,
General Laws of Oregon, 1921. He was taken before
F. W. Stadter, Esquire, acting as municipal judge
and *ex-officio* justice of the peace. He refused to
plead to the charge made and a plea of not guilty
was entered for him.

After trial he was convicted on said charge and
sentenced to pay a fine of $10, or in lieu thereof, to
serve five days in the county jail. Pursuant to such
conviction and sentence Boalt was forthwith re-
manded to the custody of L. V. Jenkins, Chief of
Police of the City of Portland, the defendant herein,
for delivery to the sheriff of Multnomah County,
Oregon, by him to be imprisoned in the county jail
until such fine be paid, not exceeding five days.

At the hearing upon the return of the writ, all of
the facts material to raise the questions here in issue
were stipulated, and the applicant thereupon moved
for judgment discharging the defendant.

The matter was argued before four judges of the
Circuit Court sitting *en banc* and it was determined
from the pleadings and the facts stipulated, that
F. W. Stadter, before whom the applicant was tried
and convicted and who issued the commitment, was
not at the time of the issuance of said commitment a
duly constituted *ex-officio* justice of the peace and
was without authority to officiate in any judicial
capacity so far as the laws of the State of Oregon
are concerned. Judgment was accordingly entered
discharging the prisoner. The respondent submits

that the commitment was issued by a court not legally constituted.    REVERSED.    REHEARING DENIED.

For appellant there was a brief and oral arguments by *Mr. Frank S. Grant,* City Attorney, and *Mr. R. A. Imlay,* Deputy City Attorney.

For respondent there was a brief and oral argument by *Mr. Wilber Henderson.*

BEAN, J.—1. The first question is, Can a court in a *habeas corpus* proceeding inquire into the legal status of the court or tribunal issuing the process by which the petitioner is held in custody?

Section 642, Or. L., provides in part that:

"If it appears on the return that the prisoner is in custody by virtue of an order or civil process of any court legally constituted, or issued by an officer in course of judicial proceeding before him authorized by law, such prisoner shall only be discharged in one of the following cases. * *

"6. When the order or process is not authorized by any judgment or decree of any court, nor by any provision of law."

It will be observed that the order or process must have been issued by a court legally constituted; therefore if the court which issued the commitment in the instant case was not legally constituted, the writ will lie. The general law is stated in Volume 29 C. J., page 40, paragraph 31, as follows:

"The legal existence of the court by virtue of whose process the prisoner is detained may be inquired into on *habeas corpus,* as this involves a question of jurisdiction."

The foregoing is supported by an extensive note in 16 Ann. Cas., page 338.

Section 627, Or. L., provides in part thus:

"Every person imprisoned or otherwise restrained of his liberty, within this state, under any pretense whatsoever, except in the cases specified in the next section, may prosecute a writ of *habeas corpus* according to the provisions of this chapter, to inquire into the cause of such imprisonment or restraint, and if illegal, to be delivered therefrom."

Section 628, Or. L., reads as follows:

"The following persons shall not be allowed to prosecute the writ: * *

"2. Persons imprisoned or restrained by virtue of the judgment or decree of a competent tribunal of civil or criminal jurisdiction, or by virtue of an execution issued upon such judgment or decree."

The petitioner contends, in effect, that the process of commitment issued by the municipal judge as *ex-officio* justice of the peace was unauthorized and void.

Ever since the incorporation of the City of Portland in 1851, the judge of the city's court has exercised, by virtue of his office, the functions of a justice of the peace, first by virtue of an act of the territorial legislature creating the City of Portland and thereafter by various acts of the state legislature re-enacting the original provision.

The last legislative enactment, conferring *ex-officio* powers of a justice of the peace upon the municipal judge, was passed in 1903. At an election held in the City of Portland in May, 1913, the legislative charter of 1903 was amended by virtue of the Home Rule provisions of the Constitution passed in 1910 (Art. XI, § 2), so as to change the form of the city's government from councilmanic to commission. The amended charter provided that the judge of the municipal court should be elected by the council instead

of by the people as theretofore provided in the legislative charter of 1903. The provisions of 1903 charter (Sections 328 to 338) define the jurisdiction of the Municipal Court.

Section 328 of the 1903 charter, Special Laws of Oregon, 1903, page 130, reads as follows:

"There is hereby created a municipal court for the City of Portland, which shall be known and described as the 'Municipal Court for the City of Portland,' which shall be a court of record having a seal."

Section 329 of that instrument is in the following language:

"Said municipal court shall have jurisdiction of all crimes defined by ordinances of the city of Portland, and of all the actions brought to enforce or recover any forfeiture or penalty declared or given by any such ordinance; and shall likewise have, within the city of Portland, the jurisdiction and authority of a justice of the peace and committing magistrate, and shall be subject to all of the general laws of the state prescribing the duties of a justice of the peace and the mode of performing them, except as herein otherwise provided."

Chapter 249, General Laws of Oregon, 1925, page 453, provides:

"That in all incorporated cities of the state of Oregon, the population of which exceeds 200,000, having a recorder's or municipal court created by law or by the charter of such city, the common council shall have power to provide, by election or appointment, as the charter may prescribe, for an additional judge and for dividing the work of such court. Such additional judge shall have the qualifications and powers and shall perform the duties prescribed by law and the charter of such city."

Section 283 of the charter enacted by the people of the city in 1913 provides:

"That so much of sections 167 to 268 and 287 to 305, both inclusive, and of sections 328 to 345, both inclusive (Charter of 1903), as is not inconsistent with the provisions of this charter shall remain in effect as ordinances only subject to repeal or amendment by the council in like manner and with like effect as other ordinances passed by the council."

Certain features of the commissioner's charter have been before this court. The policy of this court to decide the questions as they arise, in relation to this charter, is indicated by the language of Chief Justice McBRIDE in *State ex rel.* v. *Portland,* 65 Or. 273, at page 283 (133 Pac. 65):

"Without committing ourselves to the unqualified declaration that every amendment and part thereof is absolutely valid and unassailable, we content ourselves with saying that, taken as a whole, we discover no such omissions or discrepancies as would justify us in holding that the revision is void."

That was a proceeding to test the validity of the revision of the city charter as a whole. The claim was made that the new charter was void. A local city election was involved.

The petitioner's counsel in his brief states his points as follows:

"First: that the office assumed to be occupied by F. W. Stadter was without legal status because there is no charter authority for more than one municipal judge in the city of Portland.

"Second: There is no legal authority for the judge of the municipal court of Portland to exercise the functions of a justice of peace.

"Third: There is no municipal court of the city of Portland within the Constitution of the State of Oregon."

It will be seen by the provisions of the legislative charter of 1903 that ample provision was therein made for a municipal court in the City of Portland. It had been theretofore legally constituted and was plainly continued by the legislative enactment which was unquestionably pursuant to the Constitution of the state. The jurisdiction and authority of a justice of the peace and committing magistrate within the City of Portland was conferred upon the Municipal Court by the legislative mandate of 1903. Has such authority ever been abrogated? Let us inquire as to subsequent proceedings, particularly the initiative amendment of the charter in 1913. The question of the efficacy of these charter amendments in so far as they relate to purely local municipal matters, such as the improvement of streets, has been considered by this court: *Robertson* v. *Portland,* 77 Or. 121 (149 Pac. 545) ; *Spencer* v. *Portland,* 114 Or. 381 (235 Pac. 279) ; *Portland* v. *Blue,* 77 Or. 131 (149 Pac. 548).

In the case of *In re Shaw,* 88 Or. 174 (171 Pac. 896), Shaw was arraigned before the municipal judge of the City of Portland, sitting as *ex-officio* justice of the peace. He was tried, convicted and committed to the county jail. He sued out a writ of *habeas corpus* and contended, *inter alia,* that there could be no *ex-officio* justice of the peace within the city; that the legislature had abolised Justices' Courts in the City of Portland by Chapter 355, Laws of 1913. Mr. Justice BENSON, referring to and quoting from Section 329 of the legislative charter of the City of Portland of 1903, said: "The jurisdiction thus conferred has never been withdrawn, * * ." This was in 1918. Article IV, Section 1a of the Constitution, as amended in 1906, reserved the initiative and referen-

dum powers to the legal voters of every municipality as to all local, special and municipal legislation, in or for their respective municipality. Article XI, Section 2, ordains that the legislative assembly shall not enact, amend or repeal any charter or act of incorporation for any municipality, city or town. The legal voters of every city and town are thereby granted power to enact and amend their municipal charter, subject to the Constitution and criminal laws of the State of Oregon.

2, 3. These constitutional mandates did not divest the legislature of the state of the power to enact general laws concerning cities and towns: *Colby* v. *City of Medford*, 85 Or. 485 (167 Pac. 487); *Lovejoy* v. *Portland*, 95 Or. 459 (188 Pac. 207). Neither does either of the constitutional amendments referred to extend the authority of a municipality over subjects not properly municipal and germane to the purposes for which municipal corporations are formed: *Woodburn* v. *Public Service Com.*, 82 Or. 114 (161 Pac. 391, Ann. Cas. 1917E, 996, L. R. A. 1917C, 98).

4. The duties and powers imposed upon a municipality are twofold,—one governmental, the other municipal or local. A city has no authority to create offices where it is not expressly so empowered by the Constitution, a statute or a charter provision, unless the power has been conferred upon it at least by necessary implication: 43 C. J., § 975, p. 598.

"A city charter will not be so construed as to empower the council to destroy the city government by abolishing all the city offices, where the language is susceptible of an application which will not produce such absurd results." 43 C. J., § 977, p. 600.

5, 6. It is a general rule that if a city ordinance professes to abolish an office in one clause and in

another to reinstate it, the office is not abolished in fact. We see no reason why the same rule is not applicable to the amendment of a city charter by the people of the city. An office created by the legislature cannot be abolished by the city unless such action is pursuant to constitutional or statutory power to do so: 43 C. J., § 981. The question whether the function of the office is local, pertaining strictly to local affairs, or governmental, of state-wide concern, is important.

7–10. The duties of a municipal judge in the enforcement of city ordinances is purely municipal. When acting as an *ex-officio* justice of the peace or as a committing magistrate, his duties are governmental in their nature, and the state is interested in the performance of such d. .es. The divesting of an officer clothed with the functions of a justice of the peace, within the limits of the City of Portland by the amendment of the city charter, by the people of the city, by means of the initiative, should not be presumed, unless the language of the amendment plainly warrants such a construction. It is plain from the language of Section 283 of the charter of 1913, transmuting the sections of the legislative charter of 1903, to ordinances of the city (as far as the city had power to do so), that it was not the intention of the framers of the law in drafting the amended charter, or of the people in adopting the same, to abolish the office of municipal judge, or to divest such officer of the authority of acting as *ex-officio* justice of the peace. As heretofore declared by this court, speaking by Mr. Justice BENSON, the amendment did not have such effect and the authority conferred by Section 329 of the legislative charter of 1903 has never been abro-

gated. In construing a statute one of the main canons of construction is to ascertain the intention of the lawmakers.

11. The city has not the authority to divest itself of the duty of providing for the performance of the duties of the *ex-officio* justice of the peace within its territorial limits in contravention of the general plan enacted by the legislature.

12, 13. In dealing with the powers and duties of the *ex-officio* justice of the peace, within the limits of the city, the legal voters are not enacting purely local, special or municipal legislation, but are dealing with the interests of the state, and should be governed by, and their act should be in consonance with, the general laws of the state. The Constitution which confers the right of the initiative and referendum, and the power of the people of the city to enact and amend their charter, subjects such authority to the limitation of the Constitution and the criminal laws of the state.

14. In order for the enforcement of the criminal laws of the state, the legislature in its wisdom has provided that the municipal judge of the City of Portland shall have the jurisdiction and authority of an *ex-officio* justice of the peace. The city may as well repeal a portion of the criminal laws as to minimize or lessen their enforcement. We, therefore, hold that the Municipal Court of the City of Portland is a duly constituted court authorized to act as an *ex-officio* justice of the peace.

15–17. The governmental functions of the municipal judge of the City of Portland pertain to the sovereignty of the state, and such judge acting as an *ex-officio* justice of the peace is acting as a state

officer. A city cannot visit appellate powers on courts without legislative authority: *City of La Grande* v. *Municipal Court,* 120 Or. 109, 251 Pac. 305. It necessarily follows that a city cannot, in the absence of constitutional or legislative authority, divest a court of powers conferred by legislative enactment pursuant to the Constitution and policy of the state for the governmental purpose of enforcing the criminal laws of the state. The rule is thus stated by Mr. Justice EAKIN, in *Riggs* v. *Grants Pass,* 66 Or. 266, 269 (134 Pac. 776):

" * * The power of the legislature is unlimited when not restricted by constitution; but such powers do not extend to a city except as granted by the state. Art. XI, section 2, or Article IV, section 1a, of the Constitution, do not confer such powers. The rights there given are municipal."

In *Cole* v. *Seaside,* 80 Or. 73, 84 (156 Pac. 569, 572), it is said:

" * * The logical deduction from the precedents hitherto established is that, until by its own action it surrenders its authority over the roads and highways, the state's power is paramount over any of its subordinate arms of government. If state control is to be given up to any subservient municipality, the initiative must come from the legislative department of the state, and not from the lawmaking power of the locality. The creature cannot control the creator."

*McKeon* v. *Portland,* 61 Or. 385 (122 Pac. 291); *Young* v. *Kansas City,* 152 Mo. 661 (54 S. W. 535); *State* v. *Mason,* 153 Mo. 23 (54 S. W. 524); *State* v. *Police Commissioners,* 184 Mo. 109 (71 S. W. 215, 88 S. W. 27); Clute, Modern Mun. Charters, Vol. 1, §§ 341 and 342.

In so far as Section 329 of the legislative charter of the City of Portland of 1903 relates to the jurisdiction and authority of an *ex-officio* justice of the peace, that section still has all the force and effect of a statute of the state.

In *State* v. *Port of Astoria,* 79 Or. 1, 17 (154 Pac. 399), in discussing the powers of municipalities, as contrasted with those of the state, Mr. Justice Harris recorded the following language:

"When the legal voters of a city enact municipal legislation which operates only on themselves and for themselves, and which is confined within and extends no further than the corporate limits, then such voters are exercising intramural authority. When, however, the legal voters of a city attempt to exercise authority beyond the corporate limits of their municipality, they are using an extramural power. * *"

"Extramural authority, however, is not available to the legal voters of cities and towns, unless the right to exercise it has first been granted either by a general law enacted by the legislature, or by legislation initiated by the people of the whole state. The right to employ intramural authority finds its source in the language of the constitution, because the legal voters of cities and towns are by that instrument expressly empowered to enact and amend their own charters; but permission to employ extramural authority must be granted to cities and towns before the privilege can be exercised. One power co-exists with the Constitution, while the other power does not exist at all, unless the people of the whole state either grant the authority themselves by the initiative or extend the privilege through their representative, the legislature."

18, 19. When the people of a city legislate in regard to matters affecting the sovereignty of the state of which the city is an instrumentality, the warrant for such legislation must plainly appear in the Con-

stitution or statute of the state in order to preserve the balance between municipal and state authority, and accomplish unison of purpose in the administration of the laws of the state. It is in consonance with our whole scheme of government that the legislature or the people of the whole state may enact a general law governing the exercise of municipal authority in matters not strictly local or municipal, but pertaining in part to the general welfare of the state, or the exercise of sovereign authority: 2 McQuillin, §§ 647, 649; *Straw* v. *Harris,* 54 Or. 424, 437 (103 Pac. 777); *Kiernan* v. *Portland,* 57 Or. 454, 467 (111 Pac. 379, 112 Pac. 402, 37 L. R. A. (N. S.) 332); *State ex rel.* v. *Port of Tillamook,* 62 Or. 332, 341 (124 Pac. 637, Ann. Cas. 1914C, 483); *Churchill* v. *Grants Pass,* 70 Or. 283, 288 (141 Pac. 164); *State ex inf.* v. *Gilbert,* 66 Or. 434, 439 (134 Pac. 1038); *McMinnville* v. *Howenstine,* 56 Or. 451, 457 (109 Pac. 81, Ann. Cas. 1912C, 193); *State ex rel.* v. *Swigert,* 59 Or. 132, 135 (116 Pac. 440); *West Linn* v. *Tufts,* 75 Or. 304 (146 Pac. 986, 987). See, also, *California-Oregon Power Co.* v. *City of Grants Pass* (D. C.), 203 Fed. 173, 175; *Portland Ry., L. & P. Co.* v. *City of Portland* (D. C.), 210 Fed. 667, 672.

20. It was, therefore, competent for the legislature of 1925 to enact a general law authorizing cities of over 200,000 population to elect or appoint an additional judge of their Municipal Court: *Lovejoy* v. *Portland,* 95 Or. 459 (188 Pac. 207); *Tichner* v. *Portland,* 101 Or. 294, 301 (200 Pac. 466); *Hillsboro* v. *Public Service Com.,* 97 Or. 320 (187 Pac. 677, 192 Pac. 390); *Rose* v. *Port of Portland,* 82 Or. 541 (162 Pac. 498).

21. Counsel for respondent contends that the Act of 1925 relates only to the City of Portland and is an attempt to amend the charter of that city and is repugnant to Section 2, Article XI, of the Constitution, being a special and not a general law. That point may be regarded as settled in this state. A classification of cities according to their population is constitutional: *Ladd* v. *Holmes,* 40 Or. 167 (66 Pac. 714, 91 Am. St. Rep. 457); *Tichner* v. *Portland,* 101 Or. 294, 298 (200 Pac. 466).

22–24. Section 1a, Article VII, of the Constitution ordains that:

"The judicial power of the state shall be vested in one Supreme court in such other courts as may from time be created by law. The judges of the supreme and other courts shall be elected by the legal voters of the state or of their respective districts for a term of six years, * * *"

Petitioner argues that it follows that a municipal judge is not qualified to act as *ex-officio* justice of the peace, unless he is elected for a term of six years.

While it has been held that justices of the peace should be elected for the term of six years (*Webster* v. *Boyer,* 81 Or. 485 (159 Pac. 1166, Ann. Cas. 1918D, 988), there is nothing in the language of the Constitution indicating that it was intended to apply to municipal judges clothed with the powers of a justice of the peace. The municipal judge of the City of Portland must be an attorney of the Supreme Court. The state is not interested in the manner in which such judge is elected or appointed. That is a matter of strictly local concern. At most, the manner of his appointment is an irregularity.

25. The Act of 1925 ratified and confirmed the provision of the municipal law providing for an additional judge, although it did not use those words. See

*Nottage* v. *Portland*, 35 Or. 539, at 556 (58 Pac. 883, 76 Am. St. Rep. 513); *Grady* v. *Dundon*, 30 Or. 333, 337 (47 Pac. 915).

26. A law enacted in furtherance of the police powers of the state for the benefit of the community, and not in the nature of an *ex post facto* law and which does not impair the obligations of contract, may operate retrospectively: 6 R. C. L., pp. 304, 305, § 290; Cooley's Const. Lim., p. 528 et seq.

27. The commitment of the defendant Fred L. Boalt, having been issued by a legally constituted court and authorized by law, the judgment of the Circuit Court is reversed and the writ is dismissed.

REVERSED AND WRIT DISMISSED.  REHEARING DENIED.