Argued October 4; affirmed October 9; rehearing denied
November 5, 1934

# ARCHERD *v.* BURK

(36 P. (2d) 338)

C. F. *Pruess,* of Grants Pass, and *Custer Ross,* of Salem, for appellant.

*William H. Trindle,* of Salem, for respondent.

KELLY, J. This is an appeal from the judgment of the circuit court for Marion county rendered after trial upon issues joined in a habeas corpus proceeding dismissing the suit and directing that plaintiff be remanded to the custody of defendant as sheriff of Marion county, and taken by defendant to the penitentiary to serve a sentence imposed upon plaintiff herein after having been convicted of the crime of larceny by bailee in said circuit court of Marion county, Oregon.

On February 10, 1933, an indictment was returned against plaintiff by the grand jury of said Marion county charging him with the commission of said crime of larceny by bailee. Upon trial, plaintiff was convicted and sentenced to imprisonment in the penitentiary. Plaintiff attempted to appeal to this court from said judgment of conviction. His appeal was dismissed because of his failure to serve notice of appeal upon the county clerk: *State v. Archerd,* 144 Or. 309 (24 P. (2d) 5). The plaintiff then prosecuted an appeal to the Supreme Court of the United States, which, on January 8, 1934, was dismissed for want of a properly

presented federal question: 290 U. S. 604 (54 S. Ct. 372, 78 L. Ed. 415).

Upon the receipt of the mandate of the Supreme Court of the United States, it was here filed and entered of record and the mandate of this court was then issued, remanding the cause to the circuit court for Marion county with directions to proceed in executing the sentence and judgment against plaintiff herein.

■ The plaintiff challenges the validity of the judgment of conviction and urges that the same is void. The trial was had before Honorable Arlie G. Walker presiding as trial judge. Plaintiff insists that Judge Walker had no authority to sit in said cause as the trial judge thereof. For the purpose of determining that question, this court will take judicial knowledge that, at the time of the trial, Judge Walker was the duly elected, qualified and acting judge of the circuit court in and for the Twelfth judicial district of the state of Oregon comprised of Polk and Yamhill counties. The record discloses that on the first day of said trial, viz., February 24, 1933, the chief justice of this, the Supreme Court of the State of Oregon, Honorable JOHN L. RAND, by an order duly given and made, assigned Judge Walker to duty and directed him to hold court in the Third judicial district, for the purpose of trying the case under consideration, namely, the case of *The State of Oregon v. Charles R. Archerd.* This order of the chief justice was made pursuant to the terms of chapter 83 of Oregon Laws, 1933 (Regular Session), page 91.

This chapter is an amendment of section 28-604, Oregon Code 1930, and provides that,

"For the more speedy and efficient transaction of the business of the various circuit courts in this state,

authority is hereby conferred upon the chief justice of the supreme court, and it shall be his duty, to direct any circuit judge in the state to hold court in any county of any judicial district in the state at and during any term of any circuit court, and the authority and powers of any circuit judge holding court in any judicial district of the state by assignment to duty as herein provided shall be the same·as if he had been regularly elected in that district.''

The foregoing chapter is a reenactment of the provisions of chapter 242 of the Oregon Laws for 1919, page 361, which was amended by chapter 277, of Oregon Laws for 1929, page 299. It will be noted therefrom that for ten years, beginning in 1919, the provisions of the present law were in force and effect; then for four years, beginning in 1929, the occasions for assignment of a circuit judge to a district, other than his own, were limited by the terms of the statute to those when the resident circuit judge was absent, unable to sit, or disqualified. After the expiration of those four years, the legislature struck such limitation and restriction from the statute. It is apparent that this was not done by inadvertence.

In 1880, the legislature passed an act, which has never been amended or repealed, which provides that,

''Each of the several circuit judges of this state shall have authority to hold circuit courts in any of the judicial districts of the state, when, for any reason, the circuit judge elected for such district cannot attend, or is disqualified to try any cause pending therein at the time appointed for holding said court or trying said cause.'' Laws of 1880, p. 48; Hill's Code, § 925; Or. L., § 968; Oregon Code 1930, § 28-831.

■ When plaintiff was tried and convicted, this statute had been in effect for more than half a century. We think that both it and said chapter 83 of the Laws of

Oregon, for the regular session of 1933, are valid and constitutional expressions and mandates of the legislature.

The cases cited by plaintiff to the point that Judge Walker was without authority to try the case of *State v. Archerd* are in three classes.

One of these hold that a failure to comply with the statute requiring an entry to be made of the facts constituting the reason for the disqualification or inability of the resident judge to sit is a necessary prerequisite for a justification on the part of such resident judge to decline to sit. We have no such statute, and hence, these cases are not in point. To that class the cases of *Autenrieth v. Schaff,* 271 Mo. 248 (196 S. W. 1129), and *Gresham v. Ewell,* 85 Va. 1 (6 S. E. 700), belong.

Another of these classes of cases holds that substitution of a judge after a trial has begun invalidates the proceedings. There was no such substitution in the case of *State v. Archerd.*

This class of cases is represented by *Freeman v. United States,* 227 Fed. 732, and *Mason v. State,* 26 Ohio Cir. Ct. 535.

In the latter case, the court used the following very significant language:

"We do not hold that there are not certain preliminary duties, which a judge may perform, and the case afterward be continued and completed by a different judge, but that is not the case under consideration."

The third class of cases cited by plaintiff announces the doctrine that an invalid sentence may be avoided by habeas corpus, if such sentence is beyond the jurisdiction of the trial court to impose, as where, for each count respective terms of imprisonment are imposed, when the law authorizes but one term of imprisonment

for all counts no matter how numerous, or the imposition of a sentence after proper plea of former conviction has been rejected: *People v. Liscomb,* 60 N. Y. 591 (19 Am. Rep. 211); *In re Hans Nielsen, Petitioner,* 131 U. S. 176 (9 S. Ct. 672, 33 L. Ed. 118).

Plaintiff also cites *State v. Noble,* 118 Ind. 350 (21 N. E. 244, 4 L. R. A. 101, 10 Am. St. Rep 143), which declares a statute unconstitutional attempting to create the offices of commissioners of the supreme court of Indiana.

These citations fail to convince us that Judge Walker was not authorized to preside at the trial of the criminal case mentioned.

■ In so far as it is applicable to the case at bar, the doctrine of the case *In re Boalt,* 123 Or. 1 (260 P. 1004), is that in a habeas corpus proceeding, a court may inquire into the legal status of the court or tribunal issuing the process by which the petitioner is held in custody for the reason that such an inquiry involves a question of jurisdiction.

*In re Davis,* 118 Or. 693 (247 P. 809), held that the municipal ordinance for an alleged violation of which petitioner was restrained of his liberty did not prescribe punishment by fine or imprisonment and was not a valid exercise of police power.

In *ex parte Davis,* 33 Nev. 309 (110 P. 1131), the petitioner indubitably belonged to a class excepted from the provisions of the act under which he was imprisoned.

■ *Ex parte Kearny,* 55 Cal. 212, involved a conviction in a court of inferior and limited jurisdiction. In the opinion of the court, it is stated that,

"It is not to be presumed that a court of general jurisdiction—or one which the law treats as such—has,

in any case, proceeded to adjudge upon matters over which it had no authority. On the other hand, no such intendment is made in favor of the judgment of a court of limited jurisdiction—an 'inferior court'—but the recitals contained in the minutes of the proceedings must be sufficient to show that the case was one 'which the law permitted the court to take cognizance of, and that the parties were subjected to its jurisdiction by proper process' (cases cited in note 1, p. 407, Cooley's Const. Lim.)."

Only a specially concurring opinion of one of the justices seems to refute the foregoing well-recognized rule.

*Hovey v. Elliott,* 167 U. S. 409 (42 L. Ed. 215, 17 S. Ct. 841), cited by plaintiff to the point that the right to be heard is indefeasible, is a case where the court struck an answer from the files on the ground that the answering defendants were guilty of contempt. There, the court permitted no hearing whatever. In the case at bar, there is no question that in the criminal case the defendant therein, who, as stated, is the plaintiff herein, was fully heard.

■ It is urged that because Judge McMahan presided when the indictment was returned, the arraignment had and the plea entered, and also fixed bail, set the case for trial and ruled upon a motion for postponement, the substitution of Judge Walker for the trial of the case was a denial of a fundamental right and rendered void all subsequent proceedings.

Judge McMahan testified that he declined to try the criminal case because of his intimate friendship for plaintiff herein extending over a long period of time and embracing close personal, commercial and political relationships.

We quote from a recent treatise on Judicial Discretion of Trial Courts:

"If a judge knows himself to be disqualified in a particular case, it is not only his right, but it is unquestionably his duty, to decline to preside at the trial of that case; and this duty he should perform sua sponte and not wait for objection to be made thereto." Bowers, Judicial Discretion of Trial Courts, § 120, citing *Crook v. Newborg,* 124 Ala. 479 (27 So. 432, 82 Am. St. Rep. 190); *Sewell v. Huffstetler,* 83 Fla. 629 (93 So. 162); *Walb v. Eshelman,* 176 Ind. 253 (94 N. E. 566); *Moses v. Julian,* 45 N. H. 52 (84 Am. Dec. 114); *State ex rel. Warner v. Fullerton,* 76 Okla. 35 (183 P. 979); *State ex rel. Talens v. Holden,* 96 Wash. 35 (164 P. 595).

In *State v. Gibson,* 204 Iowa 1306 (214 N. W. 743, 745), it is said:

"The high appreciation of judicial duties should prompt any judge to refrain from presiding at the trial of one charged with crime when he feels a consciousness that he cannot act in the matter with impartiality and without a feeling of prejudice."

■ That Judge McMahan, being impelled by such a motive, declined to preside at the trial of plaintiff gave no ground for just complaint or objection. The highest type of true judicial mindedness is that which in a given case recognizes its own inability to function as such. The plaintiff herein was not entitled to a friendly, but only to an impartial judge.

Plaintiff had a statutory right to file an affidavit of disqualification for prejudice against Judge Walker and not having done so, cannot in this proceeding at least be heard to say that Judge Walker was not impartial.

If the trial had begun before Judge McMahan, particularly if it had progressed to the point of taking

452

testimony, and then he had withdrawn and a different judge had been substituted, an entirely different question would be presented.

■ All of the other questions submitted by plaintiff urge that errors of law were committed by the trial judge in *State v. Archerd*. These questions are not before us in this proceeding. This is not an appeal from the judgment of conviction and we decline to treat it as such.

We quote from the case of *State v. District Court,* 33 Wyo. 281 (238 P. 545), cited by plaintiff:

"On the other hand that an error of law, even though fundamental and appearing on the face of the record, does not necessarily make a judgment void is indicated by many authorities. 33 C. J. 1079; 34 C. J. 558; 16 R. C. 33, Note 9, Freeman, supra, sec. 357, says:

" 'Obviously the power to decide includes the power to decide wrong, and an erroneous decision is as binding as one that is correct until set aside or corrected in a manner provided by law. It will not avail to say that another court might or undoubtedly would have decided the case differently, for the conclusiveness of the judgment where the court had jurisdiction of the issues before it is not destroyed because it may take a different view than some other court would take of the law governing the controversy, or contrary to law as expressed in the decisions of the supreme court, or the terms of a statute.' "

In thus quoting the Wyoming court, we do not wish to be understood as intimating that any error was committed by the trial court in *State v. Archerd*.

Plaintiff argues that the record of the case of *State v. Archerd* is devoid of any evidence of criminality upon his part. It is there shown that plaintiff herein was president and manager of the Charles R. Archerd Implement Company, a corporation; that this corporation

was operating a warehouse in Salem, Oregon; and that on or about the first, third and fifth days of August, 1931, Walker delivered to said warehouse wheat aggregating about 486 sacks thereof for storage. Walker testified that he was to get back the same wheat that he deposited. Walker also testified that on or about September 26, 1931, he sold 800 bushels of this wheat to and received a check from said corporation for two hundred and two dollars and some cents and a credit upon an account against him in the sum of one hundred and ninety-seven dollars and some cents. Walker also testified that he never at any time authorized plaintiff to take his (Walker's) wheat out and ship it and substitute other wheat for it; and that plaintiff never accounted to him for the balance of his wheat remaining after the 800 bushels had been sold, and no part of it was ever returned to him. A receivership of the corporation intervened before the return of the indictment against plaintiff and Walker made demand upon the receiver and the employees of the corporation, who were present at the corporation's place of business, for the return of his wheat. The receiver testified that he was appointed as such on October 29, 1931, and when asked if he found any wheat on hand at that time, said, "No, I don't think we found any wheat, if we did it was a very few sacks, I don't think there was any wheat at all that I remember".

Harley King, an employee of the Charles R. Archerd Implement Company, testified as a witness for the state that the wheat delivered by Walker was shipped out immediately after it was received at the warehouse.

Plaintiff, testifying in the criminal case in his own behalf, said that he proposed to Walker that an exchange should be made whereby Walker should accept wheat which in part was yet to be delivered by Durbin

& Son and the Meadowlawn Dairy Company, and Walker's wheat should be shipped out. Plaintiff testified that Walker was very much pleased with the exchange; and that the Walker wheat was sold to Eyre & Company and shipped to Eugene. The total amount of the Durbin and Meadowlawn wheat was materially less than the number of bushels for which plaintiff issued a warehouse receipt to Walker. Neither plaintiff nor Walker appear to have regarded the warehouse receipt as truly reflecting the contract between them.

8. We think that this suffices to disclose that the question of whether plaintiff committed the crime of larceny by bailee or not was a question for the jury to decide.

The judgment of the circuit court is affirmed.

BELT, J., not sitting.