Submitted on briefs January 4, affirmed January 28, 1972

PORTNOY, *Appellant, v.* McNAMARA ᴇᴛ ᴀʟ
(No. 363-701), *Respondents.*
493 P2d 63

Howard R. Lonergan, Portland, filed brief for appellant; withdrew as attorney January 3, 1972.

Marian C. Rushing, City Attorney, and Ellis E. Gerdes, Senior Deputy City Attorney, Portland, for respondents.

Before Schwab, Chief Judge, and Fort and Thornton, Judges.

THORNTON, J.

Plaintiff, a professional bail bondsman doing business in defendant city, brought suit in the circuit court for Multnomah County against the city and several of its officials challenging the validity of the city's ordinance licensing and regulating bail bondsmen.[1] In his suit plaintiff prayed for a decree "restraining defendants from taking any action interfering with plaintiff's continuing his business, [and] declaring plaintiff is not subject to the claimed regulatory

---

[1] Section 7.158.020 of chapter 7.158, Code of Portland, Oregon.

powers set forth in [the] ordinances * * *." After trial on the merits the court entered a decree for defendants and dismissed plaintiff's suit.

On appeal plaintiff contends that the decree of the court below should be reversed because (1) the subject ordinance is in conflict with state law creating the Portland municipal court and establishing the procedure therein, including provisions for bail; (2) the ordinance is in conflict with the state Insurance Code; and (3) the ordinance violates the Fourth and Fifth Amendments to the Constitution of the United States.

The municipal court of the city of Portland was created by Special Laws of Oregon 1903, ch V, section 328, p 130, which incorporated the city of Portland and provided a charter for the city.[2]

The same Act provided that the municipal court

"* * * shall likewise have, within the City of Portland, the jurisdiction and authority of a justice of the peace and committing magistrate, and shall be subject to all of the general laws of the state prescribing the duties of a justice of the peace and the mode of performing them * * *.", Special Laws of Oregon 1903, ch V, section 329, p 131,

and that

"[a]ll proceedings before the court * * * are governed and regulated by the general laws of the state applicable to the justice of the peace or justice's courts in like or similar cases * * *." Special Laws of Oregon 1903, ch V, section 332, p 132.

---

[2] The municipal court of the city of Portland was abolished effective January 1, 1972, and its "jurisdiction, authority, powers, functions and duties" transferred to the district court for Multnomah County by Oregon Laws 1971, ch 633, and a charter amendment approved by the voters of said city at a special election held in said city on December 14, 1971.

■■ Contrary to plaintiff's contention, nothing in Special Laws of Oregon 1903, ch V, sections 328, 329 and 332, pp 130-32, precludes the city from adopting an ordinance licensing and regulating the business of bail bondsman as authorized by Special Laws of Oregon 1903, ch II, section 73, paras 1, 2, 21, pp 26-29, and section 74, p 37. Similarly, the fact that the state statutes which provide for granting of bail in justice's court (ORS 156.410 to 156.460), and the parallel bail provisions relating to circuit courts (ORS 140.010 to 140.990) do not contain any provision for licensing bail bondsmen, would not operate by way of implication to prevent the city from adopting an ordinance providing for the licensing and regulation of professional bail bondsmen. *See Terry v. City of Portland et al,* 204 Or 478, 269 P2d 544 (1955).

*In re Application of Boalt,* 123 Or 1, 260 P 1004 (1927), cited by plaintiff, held, *inter alia,* that the city of Portland, in legislating with reference to the powers and duties of the same Portland municipal court as an ex-officio justice of the peace court within the city limits, was limited in its action by the general laws of the state. *Boalt* is not in point. Unlike in *Boalt,* the ordinance at bar in no way attempts to change or modify the general laws of the state dealing with the powers and duties of the judges of Portland's municipal court as ex-officio justices of the peace.

■ Plaintiff's second point is that the statutory law of the state of Oregon (state Insurance Code) has pre-empted the field of licensing and regulating professional bail bondsmen and that the subject ordinance conflicts with that state code. This contention col-

lapses because of the plain language of ORS 731.036 (1) which specifically provides:

"The Insurance Code does not apply to:

"(1)   A bail bondsman, other than a corporate surety and its agents * * *."

Also, ORS 731.840(4) of the same code limits state pre-emption of this field to taxes, licenses, fees, etc., imposed upon "insurers and their agents and other representatives * * *."

It is obvious that the state has not pre-empted the field of licensing and regulating individuals doing business as professional bail bondsmen. *See Terry v. City of Portland et al,* supra. According to plaintiff's complaint he is neither a corporate surety nor its agent. Since plaintiff does not fall within either exception he is presumptively subject to the bail bondsman ordinance. There is no conflict with the state Insurance Code.

Plaintiff urges that the subject ordinance violates the Fourth and Fifth Amendments to the Constitution of the United States in authorizing defendant city to inspect plaintiff's books and records. He relies principally upon *See v. City of Seattle,* 387 US 541, 87 S Ct 1737, 18 L Ed 2d 943 (1967), and its companion case, *Camara v. Municipal Court,* 387 US 523, 87 S Ct 1727, 18 L Ed 2d 930 (1967). In *See,* the court held that the Fourth Amendment barred criminal prosecution of a person who refused to permit a city fire inspector to inspect his locked warehouse without a search warrant.

██ Plaintiff's Fourth Amendment contention cannot be sustained for two reasons. First, as the United States Supreme Court observed in *Colonnade Corp. v.*

*United States,* 397 US 72, 90 S Ct 774, 25 L Ed 2d 60 (1970), the general rule that administrative entry, without consent, upon portions of commercial premises which are not open to the public, may only be compelled through prosecution or physical force within the framework of a warrant procedure, is not applicable to inspections under "licensing programs" requiring such inspection. We are concerned here with the conventional licensing and regulating authority of an Oregon municipality. Municipalities are usually empowered to license businesses, trades, occupations and professions in accordance with statutory authority delegated to them for that purpose. 9 McQuillin, Municipal Corporations 235, § 26.102 et seq (3d ed rev 1964). Secondly, the thrust of the subject ordinance is civil in nature. Unlike in *See* and *Camara,* we are not dealing with criminal prosecutions nor with an attempt by a public agency to inspect private premises to discover possible criminal violations. As the United States Supreme Court made clear in *Wyman v. James,* 400 US 309, 91 S Ct 381, 27 L Ed 2d 408 (1971), the rule announced in *Camara* and *See* applies only to methods of enforcement by criminal prosecution.

The subject ordinance was enacted pursuant to charter authority. Power of municipal corporations to license and regulate professional bail bondsmen has been uniformly upheld. *See The People v. Adams,* 351 Ill 79, 183 NE 810 (1932) ; *Johnson v. City of Paducah,* 461 SW2d 357 (Ky 1970) ; *Baltimore City v. Stuyvesant Co.,* 226 Md 379, 174 A2d 153 (1961) ; *State, ex rel., v. Schiele,* 153 Ohio St 235, 91 NE2d 5 (1950). Similarly, and by way of analogy, the courts have held that municipal corporations may regulate the business of liquor dealers, pawnbrokers and junk dealers, and that such regulations as will facilitate the detection of unauthor-

ized practices are a proper exercise of municipal police power. *Hornsby v. Allen,* 330 F2d 55 (5th Cir 1964); *Launder v. City of Chicago,* 111 Ill 291, 53 A R 625 (1884); *Mansbach Scrap Iron Co. v. City of Ashland,* 235 Ky 265, 30 SW2d 968 (1930).

Regulations requiring the keeping of records of pawnbrokers' loans made and delivery to police authorities daily of a copy of such records and providing for the inspection of books and accounts have likewise been approved by the courts. *City of St. Joseph v. Levin,* 128 Mo 588, 31 SW 101 (1895); *Chambers v. Cincinnati,* 31 Ohio C C R 8 (1907).

As to plaintiff's Fifth Amendment contention, the same rationale which we have already discussed with reference to plaintiff's Fourth Amendment argument applies with equal force and relevance to plaintiff's Fifth Amendment contention: The inspections provided by the subject ordinance are civil rather than criminal in nature, and therefore the Fifth Amendment is not applicable. *See United States v. Roundtree,* 420 F2d 845 (5th Cir 1969).

In *Roundtree* the Internal Revenue Service summoned a taxpayer to produce books and records as to his and his wife's tax liability. He resisted the summons by asserting his Fifth Amendment right against self-incrimination. The court held that the summons must fail if the sole purpose of the summons was to build a criminal prosecution; however, if the Internal Revenue Service's contention that this was a civil investigation was sustained, possible use of evidence in a later prosecution would not support a claim of self-incrimination. *Cf. Marchetti v. United States,* 390 US 39, 88 S Ct 697, 19 L Ed 2d 889 (1968).

Affirmed.