Argued January 30, decided February 10, 1914.

## PORTLAND *v.* PARKER.

(138 Pac. 852.)

**Constitutional Law—Effect—Previous Laws—Implied Repeal.**

1. Article XI, Section 2, of the Constitution, as amended in 1910 (see Laws 1911, p. 10), providing that the legislative assembly shall not enact, amend or repeal any charter or act of incorporation for any municipality, and giving the legal voters of every city and town power to enact and amend their charter does not repeal a city ordinance, adopted in 1904, defining and punishing vagrancy.

**Municipal Corporations—Police Regulations—Implied Repeal.**

2. Laws of 1911, page 138, defining and punishing vagrancy, which does not conflict with a city ordinance passed in 1904, defining the same offense except that it imposes a heavier punishment than the ordinance, does not repeal the ordinance.

> [As to implied power to repeal municipal ordinance, see note in Ann. Cas. 1913D, 768.]

From Multnomah: CALVIN U. GANTENBEIN, Judge.

Department 1. Statement by MR. CHIEF JUSTICE McBRIDE.

The defendant, J. Parker, was convicted in the police court of the City of Portland of the crime of vagrancy, and appeals.

The city charter of Portland, enacted by the legislature prior to any of the constitutional amendments hereinafter mentioned, gave the city the "power to define and punish vagrancy," and in 1904 the follow-

ing ordinance was adopted in pursuance of such authority:

"Section 55. The following persons are declared to be vagrants and shall be subject to arrest and punished as in this section provided, viz.:

"First. Every idle or dissolute person without visible means of living or a lawful occupation who has an ability to work but does not seek or refuses to seek employment or labor, or refuses to labor when employment is offered.

"Second. Every person who shall solicit alms as a business, or be found begging the means of support.

"Third. Every person who habitually roams about from place to place without any lawful business.

"Fourth. Every person having no lawful means of support who shall habitually be found loitering around any steamboat landing, railway depot, banking institution, place of amusement, street corner, or crowded thoroughfare, or wandering about the public streets at late or unusual hours at night.

"Fifth. Every person found lodging in any barn, shed, shop, outhouse, vessel, railroad car, or place other than is kept for lodging purposes without the permission of the owner or person entitled to the possession thereof.

"Sixth. Every person who frequents or stays in or about houses of ill-fame or who habitually associates with common prostitutes.

"Seventh. Every common prostitute or person found on the public street or at the window of any house opening on any public street, soliciting prostitution.

"Eighth. Every person commonly known as a macquereaux or pimp. Every person enumerated and described in this section shall be deemed a vagrant, and upon conviction thereof before the municipal court, shall be punished by a fine of not less than ten nor more than one hundred dollars, or by imprisonment in the city jail not less than five days nor more than three months, or by both such fine and imprisonment, and shall also pay the costs of prosecution. In all cases of prosecution under this section, common

fame shall be taken to be competent evidence in support of the complaint, and every house or place commonly known to be used or occupied for purposes of prostitution shall be taken and deemed to be a house of ill-fame.''

In 1911 the legislature passed an act defining and punishing vagrancy, being Chapter 95, Laws of 1911. It is claimed that under Article XI, Section 2, of the Constitution, as amended, the city ordinance is void because it conflicts with the act of the legislature upon the same subject.                                            AFFIRMED.

For appellant there was a brief over the names of *Mr. Ralph E. Moody, A. Walter Wolfe* and *Messrs. Farrin & Leet,* with an oral argument by *Mr. Moody.*

For respondent there was a brief over the names of *Mr. Lyman E. Latourette* and *Mr. Walter P. La Roche,* City Attorney, with an oral argument by *Mr. Latourette.*

Opinion by MR. CHIEF JUSTICE McBRIDE.

1. We quote that portion of the Constitution, as amended in 1910, which it is contended is controlling on behalf of the defendant in the case at bar: ''The legislative assembly shall not enact, amend or repeal any charter or act of incorporation for any municipality, city or town. The legal voters of every city and town are hereby granted power to enact and amend their municipal charter, subject to the Constitution and criminal laws of the State of Oregon.'' Before this amendment was adopted, Portland, pursuant to its charter granted by the legislature, had in 1904 passed the ordinance under which defendant was convicted, and it has not amended or changed it since. It is therefore clear that the amendment to the·Constitu-

69 Or.—18

tion has not in itself repealed the charter or the ordinance; and, if it is not now in force, it is because the state statute of 1911 has repealed it.

2. Waiving the question of the right of the legislature to repeal a charter or ordinance of a city by a general law, we are satisfied that it has not attempted to do so in this instance. In the case of *Warren* v. *Crosby,* 24 Or. 558 (34 Pac. 661), Mr. Justice Lord uses the following language:

"In coming to the conclusion reached in this case, we have not overlooked the principle that a general law will not be considered as modifying or repealing a special or local law, except by express words or necessary implication. 'Laws special and local in their application,' says Allen, J., 'are not deemed repealed by general legislation, except upon the clearest manifestation of the legislature to effect such repeal, and ordinarily an express repeal by some intelligible reference to the special act is necessary to accomplish that end': *People* v. *Quigg,* 59 N. Y. 88. 'But,' as was said by Dixon, J., 'there is no rule of law which prohibits the repeal of a special act by a general one; nor is there any principle forbidding such repeal without the use of express words declarative of the legislative intent to repeal the entire statute': *New Brunswick* v. *Williamson,* 44 N. J. Law, 167. The question is one of intention, and the purpose of the general act to modify or repeal the special act must be clearly manifested—the conflict must be irreconcilable—in the absence of express words declarative of the legislative intent: *Brown* v. *City of Lowell,* 8 Met. [Mass.] 172; *Brown* v. *County Commissioners,* 21 Pa. 42; *State* v. *Fitzporter,* 17 Mo. App. 273; *Fosdick* v. *Village of Perrysburg,* 14 Ohio St. 485, 486; Sedgwick, Statutory Law, 123."

The statute of 1911 makes any person guilty of violent, riotous or disorderly conduct, or of using abusive or obscene language in any public place, street or highway, whereby the peace and quiet of the neigh-

borhood is disturbed, a vagrant, and, if the contention of the defendant is upheld, takes away from the city authorities the power to punish that class of offenses most frequently the subject of police supervision in the cities. There is nothing in the city ordinance that conflicts with the state law except that the punishment upon conviction in the municipal court may be somewhat lighter than upon conviction in the state court. But, from the very earliest judicial history of the state, the law has provided that persons convicted in justices' courts of assaults and other like offenses may be punished by a fine, or by a small fine and imprisonment, while, if convicted of a like affair in the Circuit Courts, the punishment is much greater: Section 1924, L. O. L. Repeals by implication are not favored, and we would not be justified in assuming that it was within the legislative intent to effect the repeal of any portion of the charter or ordinances of the City of Portland by the enactment of the act of 1911, above cited.

The judgment is affirmed.          AFFIRMED.

MR. JUSTICE MOORE, MR. JUSTICE BURNETT and MR. JUSTICE RAMSEY concur.