Argued January 2, affirmed January 17, petition for
rehearing denied February 13, 1968

GRAYSON, *Appellant, v.* STATE OF
OREGON, *Respondent,*
HEER, *Appellant, v.* STATE OF
OREGON, *Respondent.*
436 P. 2d 261

*Dan W. Poling,* Newport, argued the cause and filed the brief for appellants.

*W. T. Hollen,* Special Deputy District Attorney, Newport, argued the cause and filed the brief for respondent.

Before Perry, Chief Justice, and McAllister, Sloan, O'Connell, Goodwin, Holman and Langtry, Justices.

LANGTRY, J. (Pro Tempore).

These consolidated cases are submitted under a narrative statement authorized by ORS 19.088. In each the defendant was arrested by a city policeman of Newport within the territorial limits of that city and charged in its municipal court with violation of the state statute prohibiting the operating of a motor vehicle while under the influence of intoxicating liquor. ORS 483.992(2). They pleaded not guilty in each case and in each the city attorney was appointed for the purpose of that case only as a special deputy district attorney. The defendants objected to the taking of any testimony upon the grounds that the court had no jurisdiction of the matter and that the proceedings in the municipal court violated the equal protection clause of the 14th Amendment to the United States Constitution. The principal question respects the jurisdiction of the municipal court of Newport to hear the charge under this state statute. The theory of the prosecution is that the municipal court in these cases

is acting as a state justice of the peace court, and, as such, has the authority and jurisdiction of a state justice of the peace within the territorial limits of the city.

The decision necessarily involves an interpretation of the special legislation which incorporated the city of Newport and the home rule charter adopted by the city in 1962 as a replacement for the legislative charter. The challenge of the defendants in the municipal court cases was heard by the circuit court on a Writ of Review, in which the defendants became plaintiffs. The circuit court found unfavorably to them and they appealed, as indicated above, to this court. Counsel for each side, respectively, in their briefs, inform this court that the authority for jurisdiction of a justice of the peace and committing magistrate within the city of Newport was conferred upon its municipal or recorders court by the legislative act of February 18, 1891. In this there seems to be an error,[1] but not one of substance, for regardless of the session which passed the language of the legislative charter being construed, it was duly enacted before

---

[1] A review of the special laws of the legislature passed prior to the home rule amendment to the Oregon Constitution, Art XI, § 2, adopted in 1906 and amended in 1910, indicates that the city of Newport was first incorporated by a law of the 1882 legislature. Laws of Oregon 1882, p 110. Section 7 of this charter provided:

"The Recorder shall have the jurisdiction of a Justice of the Peace in the corporate limits in civil and criminal proceedings, and his Court shall be governed, as far as applicable, by the general laws under which Justice Courts are conducted   *   *   *."

This charter was amended by the following special acts: Laws of Oregon 1885, p 437; Laws of Oregon 1887, p 318; Laws of Oregon 1891, p 677. None of these changed the above quoted language from the 1882 act. The entire act, with its amend-

the adoption of the home rule amendment to the Oregon Constitution in 1906. Oregon Constitution, Art XI, § 2.

From territorial days in Oregon until adoption of the home rule amendment, individual city charters were special enactments of the legislature. Most of them conferred, in one manner or another, authority and jurisdiction within the city of a justice of the

---

ments, was repealed in 1905 and a new charter was enacted. Special Laws of Oregon 1905, ch 290, p 901. In Art VII, § 6 of the 1905 act, it was provided that the city recorder should have "all the power, jurisdiction and authority of a justice of the peace and magistrate in all criminal and civil matters arising within the city," and it was further provided that "he shall be governed by the laws relating to justices of the peace." Section 18 provided that fines collected when the recorder was acting as justice of the peace should be disposed of as provided for by the general laws of the state. These provisions, with identical numbering, are found in the charter of the city of Newport, as codified in March 1940 by the Bureau of Municipal Research of the University of Oregon. Thus, it appears that the special legislative charter provisions referred to by respective counsel are as they indicate them to be, but that they are derived from the laws of 1905 as distinguished from the laws of 1891.

The charter of 1962 follows the form of the Model City Charter for the city manager form of government published by the Bureau of Municipal Research of the University of Oregon. It specifically reserves from the 1905 legislative charter subsections 34 and 37 of Section 8 of Article V, but again the error noted above was repeated in the enactment of the 1962 charter, for it refers to these sections as having been in the original Newport city charter adopted February 18, 1891. These were actually in the charter in exactly the same sections (subsections 34 and 37, Section 8, Article V) enacted by the legislature in 1905. The act of February 18, 1891, was simply an amendment to part of the 1882 charter. The subsections had to do with power to lay out streets and hold real estate and are of no interest here except as they may show an intent on the part of the city at the time of adopting the 1962 charter to retain some of the special powers granted by the legislature prior to the home rule amendment to the Constitution.

This history of Newport's charters is revealed by the session laws of the respective legislative sessions prior to 1906, and charter documents filed with the Supreme Court Librarian, of which the Court must take judicial notice. ORS 221.710.

peace of the state upon the person who filled the role of municipal judge, or whatever title the charter might give him.

This legislative practice was challenged early and often in higher state courts, but was always upheld. *Ryan v. Harris,* 2 Or 175 (1866); *Craig v. Mosier,* 2 Or 323 (1868); *State of Oregon v. Wiley,* 4 Or 184 (1871); *City of Portland v. Denny,* 5 Or 160 (1874); *Multnomah Co. v. Adams,* 6 Or 114 (1876); *Clemmensen v. Peterson,* 35 Or 47, 56 P 1015 (1899). The challenges continued after adoption of the home rule amendment in 1906, with the same result. *In re Shaw,* 88 Or 174, 171 P 896 (1918); *In re Application of Boalt,* 123 Or 1, 260 P 1004 (1927); and *Claypool v. McCauley et al,* 131 Or 371, 283 P 751 (1929).

■ There is little that is new in the instant challenge. Plaintiffs' first point is that the municipal judge lost his justice of the peace authority with enactment of legislation creating a district court and abolishing the regular state justice of the peace court in the city. ORS 46.025, 51.020, 51.030.

In *In re Shaw,* supra, in 1918, the challenge was upon identical grounds. There, defendant was before the municipal judge of Portland, sitting as ex officio justice of the peace pursuant to a similar charter provision, charged with vagrancy. The state statute defining the offense gave exclusive jurisdiction to circuit and justice courts. The legislature, by Gen Laws of Oregon 1913, ch 355, p 732, had created *within the city,* district courts and abolished *within the city* the justice of the peace district.

The defendant argued that, therefore, there could be no ex officio justice of the peace in the city. The court said, after quoting the applicable Portland

charter provision, which is similar to that under attack in this case and was in Portland's 1903 legislative charter:

> "The jurisdiction thus conferred has never been withdrawn and whatever may be the effect of the act of 1913 as to the abolition of Justice Courts, *eo nomine*, there is nothing in the act which is inconsistent with this grant of jurisdiction and petitioner's contention utterly fails." 88 Or at 175.

The decision would be determinative of the instant case were it not that the ex officio justice of the peace provision has been retained unchanged in the Portland charter since adoption of the home rule amendment.

Newport completely dropped the similar provisions in its legislative charter when it adopted the 1962 charter. Did such action terminate the authority conferred under the 1905 special legislative charter?

■ Oregon precedents indicate it did not. A city charter is a grant of authority, and not a limitation upon it. *Fisher et al v. City of Astoria,* 126 Or 268, 269 P 853, 60 ALR 260 (1928); see Etter, *General Grants of Municipal Power in Oregon,* 26 Or L Rev 141 (1947). In the latter article, at page 165, the author says:

> "The fact that the state constitution provides for home-rule charters does not imply that a home-rule charter or any other kind of charter must enumerate powers in order to confer them * * *."
>
> "* * * Many Oregon municipalities derive municipal life from statutes and not from charters and many Oregon ordinances are referable only to constitutional or statutory provisions and not charter powers * * *."

Cf. *Davidson Baking Co. v. Jenkins et al,* 216 Or 51, 58, 337 P2d 352 (1959).

Some twenty years after the challenge to the Portland municipal court's ex officio justice of the peace jurisdiction was rejected in *Shaw,* supra, another major challenge was made in *Boalt,* supra. The charge against the defendant was for violation of a state motor vehicle law and the judge acted in his capacity as a justice of the peace. His jurisdiction was challenged on *habeas corpus* and appeal was taken. The court said:

"* * * An office created by the legislature cannot be abolished by the city unless such action is pursuant to constitutional or statutory power to do so * * *. *The question whether the function of the office is local* * * * *or* * * * *of state-wide concern, is important.*" (Emphasis supplied.)

"* * * When acting as an *ex-officio* justice of the peace or as a committing magistrate * * * the state is interested * * *. The divesting of an officer clothed with the functions of a justice of the peace * * * by amendment of the city charter, by the people of the city * * * should not be presumed, unless the language of the amendment plainly warrants such a construction * * *." 123 Or at 13.

Then the court said:

"The city has not the authority to divest itself of the duty of providing for the performance of the duties of the *ex-officio* justice of the peace * * * in contravention of the general plan enacted by the legislature.

"* * * [F]or the enforcement of the criminal laws of the state, the legislature * * * provided that the municpal judge * * * shall have the jurisdiction * * * of an *ex-officio* justice of the peace. The city may as well repeal a portion of the criminal laws as to minimize or lessen their enforcement * * *." 123 Or at 14.

"* * * [T]hat section still has all the force and effect of a statute of the state." 123 Or at 16.

Importance is attached in this decision to the language of the home rule amendment.

"* * * The legal voters of every city * * * are hereby granted power to enact and amend their municipal charter, subject to the Constitution and criminal laws of the state * * *." Oregon Constitution, Art XI, § 2.

Portland, in amending its charter after 1906, was careful to preserve the legislative grant of justice of the peace jurisdiction. Such being the case, it can be argued that much of the language quoted above is dictum. The instant case presents the point squarely, as to whether, even by completely eliminating such a provision in its charter, a city may divest itself of the authority contained in the legislative charter.

In *Claypool v. McCauley*, supra, it is noted that the city of Bend was incorporated and existed under a general statute of 1893. Gen Laws of Oregon 1893, pp. 119, 130, now ORS 221.901 et seq. One section of this act conferred on the judges of cities incorporated thereunder powers "like a justice of the peace." The city, after 1906, adopted a home rule charter, and in a 1928 amendment to it changed the name of the city court from "Recorder's Court," as provided in the 1893 statute, to "Municipal Court." The amendment did specifically retain the jurisdiction and authority of a justice of the peace and committing magistrate in the municipal judge.

The court stated, with reference to the justice of the peace power conferred in the general statute of 1893:

"* * * [S]ince the statute is applicable to

all municipalities it becomes a part of their organic law. It is as much a part of a municipal charter as if it were therein specifically written." 131 Or at 373.

That this language is too inclusive and in that sense in error is apparent. *Davidson Baking Co. v. Jenkins,* supra, at page 59:

"ORS 221.916 is part of the Act of 1893 and without application to cities not incorporated under that law [citations omitted]."[2]

*Claypool* does follow *Boalt* and *Clemmensen,* and is in point in a situation where a home rule charter amendment or enactment has changed the name of the municipal court.

■ The legislature conferred justice of the peace and committing magistrate jurisdiction by special laws on most of the municipal courts in Oregon that existed prior to 1906, and all of them that incorporated under the general act of 1893 before and after 1906. These legislative acts are part of the criminal laws of the state. A very large part of the preliminary hearings for state offenses are held in such courts pursuant to such authority, and some prosecutions for minor state offenses. The practice has been continuous since statehood. We hold where, as here, there continuously has been a municipal court, regardless of its name, and it has had a legislative grant of justice of the peace and committing magistrate jurisdiction and authority to its municipal court that has not been unequivocally repealed by the legislature, such grant of authority continues until it is so unequivocally repealed.

[2] Perhaps a scrivener's error occurred in the writing of the opinion in *Claypool,* and after the word "municipalities" the words "incorporated thereunder" were intended. An addition of these two words brings the statement into agreement with other cases and the clear language of the act.

The second question for decision is stated on page 9 of Appellant's Abstract of Record and Brief:

> "2. Are the provisions of ORS 484.030(2) constitutional as they apply in the instant case?"

ORS 484.030(2) provides that:

> "A justice court, for offenses committed within the county, and a city court, for offenses committed within * * * the city, have concurrent jurisdiction of all state traffic offenses * * * [with named exceptions not applicable to this case]."[3]

It is not clear how plaintiffs construe this statute, under the facts of this case, to be violative of the constitutional equal protection of the law's guarantee. As already noted, these prosecutions are in the municipal court acting in its state justice of the peace jurisdiction which continues in effect. The gist of plaintiffs' argument is that the arresting city police officer may choose to charge plaintiffs, for the same act, with a city ordinance or a state statute violation; saying one is not, the other is a crime.

---

[3] The question may be asked, in the light of this statute, giving all city courts jurisdiction of state traffic offenses, why there should be any problem; why is the principal point of this decision anything but moot? The answer is that the complaints are on the Oregon Uniform Traffic Citation form, charging violation of state law; and the pleadings make the State of Oregon, not the City of Newport, the complainant.

The city attorney was appointed a special deputy district attorney to prosecute these cases. If the city's law enforcement officials wish to exercise a lawful authority the city has, it is not for this court to say they should not do so because they can accomplish the same ultimate purpose in another way.

There may be reasons which motivate the use of a state prosecution in one type of case and city prosecution in another, such as the disposition of fines in traffic cases under ORS 484.220 and 484.250; or the limitation on the penalty that may be assessed as between the municipal court acting under its charter powers and its state justice of the peace powers. Cf. 32 Ops Atty Gen 404 (1964-66 Oregon).

Plaintiffs set out in their brief's appendix a purported section of Newport's ordinance penalizing intoxicated driving by fine and imprisonment. It is pleaded nowhere else in the record of this case, either here or below, and fails to comply with the requisites of pleading an ordinance of ORS 16.510(2) necessary for the court to take judicial notice thereof.

For this reason the question is not properly presented. However, it does not appear that there would be merit to the challenge if it were clear and properly before the court.

■ If a city ordinance provides imprisonment as a penalty for its violation, it provides the basis for a charge of crime, as much as though it were a state statute with the same penalty provision. *State v. Mayes,* 83 Adv Sh 643, 245 Or 179, 421 P2d 385 (1966).

Pertinent is language in *Clemmensen,* supra.

"* * * It is well known that almost every municipal corporation * * * has a clause conferring like jurisdiction [on its municipal court] * * * where the authority in granting the jurisdiction has been so generally * * * exercised * * * its repugnance to the constitution should be very clear, to justify the judiciary in abridging its continued employment * * *." 35 Or at 51, 56 P at 1017.

The judgment is affirmed.