Argued and submitted September 12, reversed and remanded December 5, 1984, appellant's reconsideration and respondent's reconsideration denied January 25, petitions for review allowed February 20, 1985 (298 Or 704)

# CITY OF PORTLAND,
*Appellant,*

*v.*

# DOLLARHIDE,
*Respondent.*

## (DA 261430; CA A31427)

691 P2d 162

Thomas H. Denney, Assistant Attorney General, Salem, argued the cause for appellant. With him on the brief were Dave Frohnmayer, Attorney General, and James E. Mountain, Jr., Solicitor General.

Stephen A. Houze, Portland, argued the cause and filed the brief for respondent.

Before Joseph, Chief Judge, and Warden and Newman, Judges.

WARDEN, J.

Joseph, C. J., concurring.

## WARDEN, J.

Defendant was charged with prostitution under section 14.36.065 of the Portland City Code. That section defines the offense in terms that are materially identical to ORS 167.007, the state statute that makes prostitution a crime. Section 14.08.025 of the city code prescribes mandatory minimum fines and periods of imprisonment for prostitution and certain other offenses.[1] There are no mandatory minimum penalties for prostitution under state law. ORS 167.007, 161.615, 161.635. Defendant demurred to the complaint on the ground, *inter alia,* that the mandatory penalties under the city ordinance are in conflict with the state statutes and are preempted by them. The trial court sustained the demurrer and dismissed the complaint. The city appeals. We agree with the trial judge and defendant that the mandatory minimum penalty provisions of the city code are invalid. However, the code provisions defining and proscribing the offense are valid and, therefore, the trial court erred in dismissing the charge.[2]

---

[1] Section 14.08.025 of the Portland City Code provides:

"Notwithstanding that the maximum possible penalty, as noted in Section 14.08.020, for each conviction of the following listed provisions of this Code is a fine of not more than five hundred (500) dollars, or imprisonment for a period not exceeding six (6) months, or both, each and every violation of the following sections shall be punished, at a minimum, upon conviction or plea of guilty, by a fine of three hundred (300) dollars for the first such violation, not less than seven (7) days imprisonment and a five hundred (500) dollar fine for the second such violation, or not less than thirty (30) days imprisonment and a five hundred (500) dollar fine for the third, and each subsequent, violation that occur(s) within any consecutive twenty-four (24) month period from the date of the prohibited act:

"(1) 14.24.050 Loitering to solicit prostitution

"(2) 14.36.060 Prohibited touching

"(3) 14.36.065 Prostitution prohibited

"While these listed mandatory minimum fines and period of imprisonment may be ordered as a part of the conditions of probation, such fines and periods of imprisonment shall not be suspended, and shall be ordered paid, or served, respectively."

[2] The city questions whether the validity of the *penalty* provisions may be challenged by a pretrial demurrer. Although defendant has contended in the trial court and on appeal that the portions of the city code defining and proscribing the offense are also preempted by state statute, our holding is that only the mandatory penalties are invalid. The city argues that defendant's challenge to the penalty provisions is premature, because she has not been convicted, and that if defendant is convicted, she will be able to challenge the sentencing provisions at the time of sentencing and on appeal. We nevertheless elect not to dispose of this appeal on ripeness grounds. We have been advised by counsel that numerous other cases are in a procedural posture

Article XI, section 2, of the Oregon Constitution provides, as relevant:

> "The legal voters of every city and town are hereby granted power to enact and amend their municipal charter, *subject to the Constitution and criminal laws of the State of Oregon* * * *." (Emphasis supplied.)

Defendant does not argue that either the proscription or the penalty provisions of the ordinances she challenges are *intrinsically* outside the city's constitutional or charter legislative authority. Her argument is that, under the tests enunciated in *La Grande/Astoria v. PERB,* 281 Or 137, 576 P2d 1204, *adhered to on rehearing* 284 Or 173, 586 P2d 765 (1978), the city provisions are inconsistent with state law and are therefore unenforceable. The court said in *La Grande/Astoria:*

> "[B]oth municipalities and the state legislature in many cases have enacted laws in pursuit of substantive objectives, each well within its respective authority, that were arguably inconsistent with one another. In such cases, the first inquiry must be whether the local rule in truth is incompatible with the legislative policy, either because both cannot operate concurrently or because the legislature meant its law to be exclusive. It is reasonable to interpret local enactments, if possible, to be intended to function consistently with state laws, and equally reasonable to assume that the legislature does not mean to displace local civil or administrative regulation[18] of local conditions by a statewide law unless that intention is apparent. * * * However, when a local enactment is found incompatible with a state law in an area of substantive policy, the state law will displace the local rule.

> "18  *The reservation in article XI, section 2, supra, regarding state criminal law reverses this assumption with respect*

identical or similar to this one. The judicial system would be better served by our deciding the issue at this time than by requiring the district court, and conceivably this court, to address the issue later in many cases. *Cf. Whipple v. OSAA,* 52 Or App 419, 421 n 3, 629 P2d 384, *rev den* 291 Or 504 (1981) ("Matters of public interest should sometimes be resolved by the courts even in the face of apparent mootness of the particular case at hand"). We note, too, that, because the invalid provisions require mandatory minimum sentences, there is no possibility that the sentences themselves may prove to be valid notwithstanding the invalidity of the code provisions. This situation is not comparable to one in which a maximum sentence under an ordinance is impermissible but some lesser permissible sentence might be imposed by the trial judge.

*to such laws."* 281 Or at 148. (Emphasis supplied; citations omitted.)

■ Defendant maintains that the city and state acts prohibiting prostitution cannot operate concurrently "because they prohibit identical conduct and thereby cannot be enforced simultaneously." We conclude that the impossibility of simultaneous enforcement is not a compelling reason for finding that the statute and the city provisions are incapable of operating concurrently. We do not understand "concurrently" to be synonymous with "simultaneously"; its meaning is that the state and local laws can operate consistently and are not repugnant to one another. The fact that they proscribe the same conduct surely does not make them mutually repugnant. *See Terry v. City of Portland et al,* 204 Or 478, 492, 269 P2d 544 (1954), *appeal dismissed* 348 US 979 (1955) ("It has been held that in determining whether the provisions of a municipal ordinance conflict with a statute covering the same subject, the test is whether the ordinance prohibits an act which the statute permits, or permits an act which the statute prohibits" (quoting 37 Am Jur, *Municipal Corporations,* § 165, p 787)).

In *Wong v. City of Astoria,* 13 Or 538 (1886), the defendant was charged under a city ordinance with keeping a bawdy house. The court stated, in rejecting the defendant's argument that the city had no authority to penalize conduct that was prohibited by statute:

"The notion that a municipal corporation has no right to prescribe a penalty for the doing an act that is criminal in its nature, or which is a crime under the general laws of the state, cannot be upheld by authority or principle.

"An act may be of such a character as to constitute two offenses, one against the state and one against the municipal government; and when that occurs, the party committing it may be punished under both jurisdictions. The authorities cited by the respondent's counsel fully sustain this view. There seems to have been an inclination, however, to accord to a municipal government the right to impose a penalty in such cases by characterizing the act under another name. For instance, if a party were to assault and beat another, the right upon the part of the municipality to punish the act as 'an assault and battery' would not be conceded, but that it could impose a penalty for fighting, or for a disturbance of the peace,

would not be denied. Under such a theory the affair would have two aspects. This seems to me to be a sort of flimsy shift, and I think it would be by far more consistent to attach a double aspect to the offense itself than to attempt to attach it to the act. The latter might logically constitute two offenses, but it can constitute but one act. If a person should, in this state, counterfeit any gold, silver, or other coin of the United States, he would be guilty of a crime against the state, and also against the United States. That would be the inevitable result of the act, and he could be punished by both governments for it, although the constitution of each declares in express terms 'that no person shall be put in jeopardy twice for the same offense.' There is a seeming inconsistency in this, I confess, but it may better be reconciled by basing the distinction upon tenable grounds than by resorting to a subterfuge."[3] 13 Or at 543.

The court in *Wong* also rejected the argument that the city lacked the authority to prescribe penalties. It noted:

"How could it be expected that a city government would suppress and prohibit a prevailing vice unless it could provide for the punishment of those engaged in maintaining it. A by-law against the commission of an act without a vindicatory part, would be as futile as the pope's bull against the comet." 13 Or at 544.

Later cases have also held that state statutes do not always preempt city ordinances that proscribe the same conduct as the statutes. *See Harlow v. Clow,* 110 Or 257, 223 P 541 (1924), *overruled on unrelated grounds, Landreth v. Gladden,* 213 Or 205, 211-23, 324 P2d 475 (1958); *Portland v. Parker,* 69 Or 271, 138 P 852 (1914); *see also City of Portland v. Sunseri,* 66 Or App 261, 265, 673 P2d 1369 (1983) (a city ordinance may go "further than, but not counter to" state statutes in what it regulates or proscribes).

Recent authority that relates directly to redundant state and local *criminal* provisions does not abound. In the context of noncriminal legislation, the Oregon courts have adhered to the principle that, in the absence of a manifest intent by the state legislature to exclude local law, city legislation is not preempted by state laws that the local

---

[3] The comments about former jeopardy in *Wong* have nothing to do with the issues in this appeal. The court's *dictum* about concurrent state and federal jurisdiction over counterfeiting federal coins is also beyond the scope of our inquiry.

provisions simply duplicate or "supplement." *State ex rel Haley v. City of Troutdale,* 281 Or 203, 211, 576 P2d 1238 (1978). The only reason for thinking that a different rule might apply to criminal legislation is that Article XI, section 2, provides that city charters are "subject to the * * * criminal laws of the State of Oregon" and that note 18 to the *La Grande/Astoria* opinion suggests that the assumptions of consistency and of nonpreemptive intent on the part of the legislature that apply to civil or administrative regulation are therefore reversed in connection with criminal regulation. However, we do not think the cryptic *La Grande/Astoria* footnote was meant to effect a sweeping departure from principles that have been traditionally applied to questions of preemption of local criminal regulation by state law. The footnote is an aside in an opinion that does not involve criminal statutes or ordinances. *Harlow v. Clow, supra,* and *Portland v. Parker, supra,* were decided under Article XI, section 2, in its present form, and *La Grande/Astoria* does not overrule those cases. We do not read the footnote in *La Grande/Astoria* as meaning that the state legislature must overtly negate an intent to preempt consistent local criminal provisions if nothing in the state statutes or their legislative history suggests the existence of a preemptive intent.

■    We find no basis for concluding that the city code provisions, insofar as they criminalize prostitution, cannot operate concurrently with the state statute or that the legislature intended the statute to be exclusive.[4] However, we conclude that the mandatory minimum sentences prescribed by the city are in conflict with applicable state law.[5]

---

[4] Defendant also argues that the city's sentencing provisions "[a]mount to an unlawful invasion of the judicial province of the district court in sentencing." Insofar as that argument relates to the mandatory minimum sentences, we do not address it, because we hold that the provision authorizing those sentences is invalid for other reasons. If the argument is also meant to suggest that the city cannot prescribe *any* penalties to be applied by a state district court judge in the exercise of his or her sentencing authority, we reject that suggestion. *See* ORS 46.045, 46.047; *see also Grayson; Heer v. State,* 249 Or 92, 436 P2d 261 (1968).

[5] The city argues below, but does not appear to contend here, that its penalties are in fact not as great as those prescribed by ORS 161.615 and 161.635. That is true of its maximum penalties. However, the city's mandatory minimum penalty provisions are more stringent than the statutory penalties insofar as the former *require* that *some* fine and/or term of actual imprisonment be imposed, while the statutes do not. *See State v. Shumway,* 291 Or 153, 630 P2d 796 (1981); *compare State v. Turner,* 296 Or 451, 457, 676 P2d 873 (1984); *State v. Wedge,* 293 Or 598, 604, 652 P2d 773 (1982).

It is stated as a general proposition in 5 McQuillin, *Municipal Corporations* § 17.15, 301 (3rd ed, 1981 rev vol) that

"if [an] ordinance penalty conflicts with that of the general law of the state covering the same subject, the ordinance penalty is void. The charter or ordinance penalty cannot exceed that of the state law." (Footnotes omitted.)

However, the remainder of the discussion in that section of McQuillin's text is so riddled with exceptions that the quoted general proposition amounts to little more than a random variation of what courts have held when confronted with random variations of the question now before us.

No Oregon case answers the question. In *Harlow v. Clow, supra,* 110 Or at 263, the court noted in holding that the city ordinance did not conflict with the state statute that "[t]he city ordinance is a duplicate of the state statute, except that the penalty prescribed by the ordinance is smaller than that prescribed by the statute." Similarly, in *Portland v. Parker, supra,* 69 Or at 275, the court said:

"There is nothing in the city ordinance that conflicts with the state law except that the punishment upon conviction in the municipal court may be somewhat lighter than upon conviction in the state court."

However, in neither case was the comparative leniency of the ordinances a factor that the court discussed in holding them to be consistent with the statutes. The only Oregon case we find or the parties cite which sustained an ordinance with a harsher penalty provision than that of the corresponding state statute is *Lyons v. City of Portland,* 115 Or 533, 235 P 691 (1925). However, *Lyons* did not involve a criminal ordinance that directly prohibited and punished conduct; it involved a licensing and regulatory ordinance, with penalties for failure to pay the license fee. Moreover, as in *Harlow* and *Parker,* the disparity in the penalties under the ordinance and the statute was not a factor in the reasoning that led the court to conclude in *Lyons* that the ordinance was not preempted.

In any event, we do not consider it necessary to decide whether there is a *general* common law or constitutional limitation, of the kind McQuillin suggests exists, that precludes local penal ordinances from prescribing penalties that are more stringent than the penalties under state laws dealing with the same conduct. The language and history of

the relevant statutes answer the specific question here. ORS 167.007 and the penalty provisions applicable to it, ORS 161.615 and 161.635, were enacted by Oregon Laws 1971, chapter 743, sections 250, 75 and 77.[6] ORS 161.025(1) includes among the general purposes of that 1971 act:

"(a)   To ensure the public safety by preventing the commission of offenses through the deterrent influence of the sentences authorized * * *.

"* * * * *

"(c)   To give fair warning of the nature of the conduct declared to constitute an offense and of the sentences authorized upon conviction.

"* * * * *

"(f)   To prescribe penalties which are proportionate to the seriousness of the offenses * * *.

"(g)   To safeguard offenders against excessive, disproportionate or arbitrary punishment."

The commentary to ORS 167.012 in *Oregon Criminal Code of 1971,* 223 (1975) says:

"The disparity in penalty provisions [for prostitution-related offenses under pre-1971 statutes] is not supported by any persuasive rationale. * * * The proposed section makes no substantive change in existing law. It combines in one section various aspects of commercialized prostitution that are presently covered in separate statutes with widely divergent penalties. The commission believes that a more realistic penalty structure will produce more effective prosecution in the area of commercialized prostitution."

■      We conclude that ORS 161.025 and the legislative history relating to the prostitution provisions of the 1971 act evince a legislative intent to exclude greater penalties for prostitution than the state statutes provide.[7] We therefore hold that the mandatory minimum penalty provisions of section 14.08.025 of the city code are invalid.

---

[6] ORS 167.007 was amended by Or Laws 1973, ch 52, § 1, and Or Laws 1973, ch 699, § 6. ORS 161.635 was amended by Or Laws 1981, ch 690, § 2. None of the amendments is relevant to or affects our analysis.

[7] There is no question before us about whether local governments may impose lesser penalties or whether local penalties for offenses other than prostitution are preempted by state law.

■ The remaining issue is whether the invalidity of the city's mandatory penalty provisions requires dismissal of the complaint. The parties provide us with no satisfactory discussion of whether the invalid provisions are severable from the code's proscribing provisions and its other penalty provisions for prostitution. The offense is defined and prohibited by section 14.36.065 of the code, which stands independently of the mandatory penalty provisions of section 14.08.025. The latter section itself makes it clear that the invalid mandatory penalties can be disregarded without destroying the underlying penalty structure. It states, as material:

> "*Notwithstanding that the maximum possible penalty,* as noted in section 14.08.020, for each conviction of [prostitution and certain other offenses] *is a fine of not more than five hundred (500) dollars, or imprisonment for a period not exceeding six (6) months, or both,* each and every violation * * * shall be punished, at a minimum [by the mandatory fines and terms of imprisonment]." (Emphasis supplied.)

We see no reason why the provisions cannot be severed, *see* ORS 174.040, or why the alleged offense cannot be tried and, if a conviction results, punished without giving effect to the mandatory minimum penalty provisions we have held to be invalid. *See State v. Shumway, supra* n 5.

Reversed and remanded for trial.

**JOSEPH, C. J.,** concurring.

I concur in the result generally. However, I am not entirely satisfied that the mystery of the meaning of note 18 in *LaGrande/Astoria v. PERB,* 281 Or 137, 148, 576 P2d 1204, *adhered to on rehearing* 284 Or 173, 586 P2d 765 (1978), has been convincingly solved. I hope and trust that the Supreme Court will tell us and the bar whether our divination is correct. If the note means that a city ordinance making punishable conduct also made punishable by state law is presumed to be beyond a city's home rule powers, the sooner everyone knows that the better.