Argued and submitted May 8, 1985, affirmed February 4, reconsideration denied
March 18, 1986

# CITY OF PORTLAND,
*Respondent on Review/*
*Petitioner on Review,*

*v.*

# DOLLARHIDE,
*Petitioner on Review/*
*Respondent on Review.*

(DA 261430; CA A31427; SC S31408; SC S31398)

714 P2d 220

Stephen A. Houze, Portland, argued the cause for petitioner on review/respondent on review. With him on the petition was Birkland, Koch & Houze, Portland.

James E. Mountain, Jr., Solicitor General, Salem, argued

the cause for respondent on review/petitioner on review. With him on the petition were Dave Frohnmayer, Attorney General, and Thomas H. Denney, Assistant Attorney General, Salem.

Timothy J. Sercombe and Stanton F. Long, Eugene, filed a memorandum amicus curiae for the City of Eugene in response to questions by the court. With them on the memorandum was Harrang, Swanson, Long & Watkinson, P.C., Eugene.

CARSON, J.

## CARSON, J.

This case involves the scope of the power granted to cities by one of the home rule provisions of the Oregon Constitution (Art XI, § 2) to enact criminal ordinances which prohibit the same conduct that is prohibited by state law.

In 1983, the Portland City Council adopted section 14.36.065 of the Code of the City of Portland,[1] which defines and prohibits prostitution in terms substantially identical to ORS 163.305, 167.002 and 167.007.[2] At the same time, the City

---

[1] Section 14.36.065 of the Code of the City of Portland provides:

"(a) As used in this Section:

"(1) 'Deviate sexual intercourse' means sexual activity between persons consisting of contact between the sex organs of one person and the mouth or anus of another.

"(2) 'Sexual conduct' means sexual intercourse or deviate sexual intercourse.

"(3) 'Sexual contact' means any touching of the sexual organs or other intimate parts of a person not married to the actor for the purpose of arousing or gratifying the sexual desire of either party.

"(4) 'Sexual intercourse' has its ordinary meaning and occurs upon any penetration, however slight; emission is not required.

"(b) It is unlawful for any person to:

"(1) Engage in, or offer or agree to engage in, sexual conduct or sexual contact in return for a fee; or

"(2) Pay, or offer or agree to pay, a fee to engage in sexual conduct or sexual contact."

[2] ORS 163.305 provides, in relevant part:

"(1) 'Deviate sexual intercourse' means sexual conduct between persons consisting of contact between the sex organs of one person and the mouth or anus of another.

"* * * * *

"(6) 'Sexual contact' means any touching of the sexual or other intimate parts of a person or causing such person to touch the sexual or other intimate parts of the actor for the purpose of arousing or gratifying the sexual desire of either party.

"(7) 'Sexual intercourse' has its ordinary meaning and occurs upon any penetration, however slight; emission is not required."

ORS 167.002 provides, in relevant part:

"(4) 'Sexual conduct' means sexual intercourse or deviate sexual intercourse.

"(5) 'Sexual contact' means any touching of the sexual organs or other intimate parts of a person not married to the actor for the purpose of arousing or

Council also adopted a mandatory minimum penalty provision for violation of the prostitution ordinance.[3] There is no mandatory minimum penalty for a conviction of prostitution under state law. ORS 167.007, 161.615 and 161.635.[4]

Defendant was charged with prostitution for violation of section 14.36.065 of the City Code. Prior to trial, defendant filed a demurrer or, in the alternative, a motion to dismiss the complaint on the ground, *inter alia,* that it failed to state facts constituting a crime because the city ordinance was "preempted" by state criminal law. Defendant contended that both the city ordinance defining and prohibiting prostitution and the mandatory minimum penalty provision applicable to

---

gratifying the sexual desire of either party."

ORS 167.007(1) provides:

"(1) A person commits the crime of prostitution if:

"(a) The person engages in or offers or agrees to engage in sexual conduct or sexual contact in return for a fee; or

"(b) The person pays or offers or agrees to pay a fee to engage in sexual conduct or sexual contact."

[3] Section 14.08.025 of the Code of the City of Portland provides:

"Notwithstanding that the maximum possible penalty, as noted in Section 14.08.020, for each conviction of the following listed provisions of this Code is a fine of not more than $500, or imprisonment for a period not exceeding 6 months, or both, each and every violation of the following Sections shall be punished, at a minimum, upon conviction or plea of guilty, by a fine of $300 for the first such violation, not less than 7 days imprisonment and a $500 fine for the second such violation, or not less than 30 days imprisonment and a $500 fine for the third, and each subsequent violation that occurs within any consecutive 24-month period from the date of the prohibited act:

"(1)  14.24.050 Loitering to Solicit Prostitution;

"(2)  14.36.060 Prohibited Touching;

"(3)  14.36.065 Prostitution Prohibited;

"(4)  14.24.055 Unlawful Prostitution Procurement Activities;

"While these listed mandatory minimum fines and periods of imprisonment may be ordered as a part of the conditions of probation, such fines and periods of imprisonment shall not be suspended, and shall be ordered paid, or served, respectively. Provided that, in cases involving the first arrest for violation of any of the above-listed Sections, the District Attorney may utilize a diversion program. Provided further that, in cases involving the first conviction or plea of guilty for violation of any of the above-listed Sections, the court may, upon a finding of indigency, suspend imposition of part or all of the fine."

[4] Prostitution is a Class A misdemeanor, ORS 167.007(2), the punishment for which is a maximum term of imprisonment of one year and a maximum fine of $2,500. ORS 161.615, 161.635.

it were in conflict with the state criminal code. The Multnomah County District Court judge, sitting as a municipal court judge pursuant to ORS 46.045(1), disallowed the demurrer as to the City Code provision defining and prohibiting prostitution, but he allowed the demurrer as to the penalty provision because it "runs counter to ORS 161.035."[5] A trial date was set. On that date, defendant's motion to dismiss the complaint was renewed and granted. The trial court was persuaded that the prohibitory ordinance could not stand after the applicable penalty provision had been struck down.

The City appealed pursuant to ORS 138.060(1),[6] raising two issues: (1) whether a demurrer is proper to challenge the penalty provision of an ordinance; and (2) whether the state law prohibiting prostitution so preempts the field that a city is precluded from enacting a mandatory minimum penalty when there is none under state law for substantially the same criminal conduct. In defendant's brief, she again argued that the Oregon Criminal Code of 1971 evidenced a legislative intent totally to occupy the field of criminal law in every political subdivision of the State of Oregon. Defendant contended that whatever authority cities had before 1971 to enact criminal ordinances, it was revoked by the legislature as part of the 1971 criminal law revision, and that today localities cannot enact ordinances which either duplicate or redefine in any way conduct that is made criminal by Oregon criminal laws.

The Court of Appeals agreed with the trial court that the City's mandatory minimum penalty provision was invalid, and that the ordinance prohibiting prostitution was valid. The

---

[5] ORS 161.035 provides, in relevant part:

"(2) Except as otherwise expressly provided, or unless the context requires otherwise, the provisions of chapter 743, Oregon Laws 1971, shall govern the construction of and punishment for any offense defined outside chapter 743, Oregon Laws 1971, and committed after January 1, 1972, as well as the construction and application of any defense to a prosecution for such an offense."

[6] ORS 138.060 provides, in relevant part:

"The state may take an appeal from the circuit court or the district court to the Court of Appeals from:

"(1) An order made prior to trial dismissing or setting aside the accusatory instrument;"

Court of Appeals, however, found the invalid penalty provision severable, and reversed and remanded for trial. *City of Portland v. Dollarhide,* 71 Or App 289, 692 P2d 162 (1984).

Both defendant and the City petitioned this court for review. Defendant again argues that the city ordinance defining and prohibiting prostitution, as well as the mandatory minimum penalty provision, is preempted by the state criminal code. She argues that the home rule amendment (Art XI, § 2) and the Oregon criminal code prohibit cities from adopting any ordinances making conduct criminal that has been made criminal by state criminal law. The City contends that both its prohibitory provision and its mandatory minimum penalty provision are valid. The City argues that its penalty provision is valid because: (1) there is no legislative intent, expressed either in the Oregon Criminal Code of 1971 or the Commentary thereto, to prohibit cities from adopting different penalties for the violation of ordinances prohibiting prostitution; and (2) a mandatory minimum penalty in a city ordinance that is no greater than the maximum penalty provided under state law for the same conduct should not be equated with a "greater" penalty than is authorized by state law.

## PRETRIAL CHALLENGE TO PENALTY PROVISION

The first issue we must address is the City's contention that a pretrial demurrer was not the proper vehicle to challenge the penalty provision of a city ordinance. The written record of the dismissal consists only of the following notation by the trial court on the face of the complaint: "preemption invalidated statute [ordinance]." From the tape recording of the oral argument on defendant's motion to dismiss, it is clear that the trial court dismissed the complaint because he believed that state law preempted the City's mandatory minimum penalty provision and that the proscriptive ordinance could not stand without a valid penalty provision.

The validity of ordinance provisions can be challenged pretrial. ORS 221.370. Defendant's pretrial motion did not attack solely the penalty provision; defendant's motion also attacked the ordinance prohibiting prostitution on the grounds, *inter alia,* that (1) the Oregon Criminal Code of 1971 evinces a legislative intent entirely to "preempt" the field of the prohibition of prostitution; and (2) because the City's

mandatory minimum penalty provision is invalid, there can be no prosecution under the prohibiting ordinance, for the reason that the offense carries no penalty.

It is beyond dispute that no conviction can be had for the violation of a statute for which no penalty is provided. *See, e.g., Smallman v. Gladden,* 206 Or 262, 277, 291 P2d 749 (1956), *overruled on other grounds, State v. Collis,* 243 Or 222, 413 P2d 53 (1966). A defendant charged under a criminal law for which only an allegedly invalid penalty is provided may challenge the penalty pretrial because, if the challenge is successful, the charge will be dismissed and the defendant will not be made to stand trial. Because defendant's challenge to the penalty provision was linked to her challenge of the prohibitory ordinance under which she was charged, defendant's pretrial challenge of the penalty provision was proper. In these circumstances, because the trial court invalidated the City's prohibitory provision, based upon the court's conclusion that the mandatory minimum penalty provision was displaced by state law, the ruling on the penalty provision was not premature. This case is appropriate for review.

## WHEN IS A CITY CRIMINAL ORDINANCE COMPATIBLE WITH STATE LAW?

Defendant challenges the City's authority to enact an ordinance defining and prohibiting prostitution which is identical in all material respects to the state criminal code provisions defining and prohibiting the same conduct. The City questions whether state criminal *penalties* for prostitution displace local criminal punishment which differs from that prescribed by state law. The answers to these questions are found in the analysis of Article XI, section 2, of the Oregon Constitution.

In 1906, Oregon voters adopted by initiative process two amendments to the Oregon Constitution which together provide "home rule" for cities and towns. Art XI, § 2; Art IV, § 1a (now 1(5)). Article XI, section 2 provides, in relevant part:

"The legal voters of every city and town are hereby granted power to enact and amend their municipal charter, *subject to the* Constitution and *criminal laws of the State of Oregon * * *.*" (Emphasis supplied.)

This sentence in Article XI, section 2 contains a

grant of power to the citizens of local communities, but it also contains a limitation. Defendant's supplemental memorandum contains a comprehensive review of the "subject to" clauses in state home rule provisions. We note that Oregon is the only state which limits municipal home rule in this particular way. The vast majority of states with such provisions have made municipal home rule subject to the state's "laws" or "general laws."

The meager history of Article XI, section 2 indicates that its proponents, the People's Power League, used the following language in their informational circular promoting the adoption of Article XI, section 2:

"'* * * cities or towns * * * shall be *subject to and controlled by general laws.* Any city shall be permitted to frame and enact a charter for its own government *consistent with and subject to the* constitution and *laws of this state.*" Introductory Statements, Arguments and Suggested Amendments to the Constitution of Oregon and an Anti-Pass Law for Public Officials at 5. (Emphasis supplied.)

Nevertheless, the initiative petition successfully circulated by the People's Power League both entitled and phrased the proposed amendment in the terms that now appear in the constitution: "*subject to the* Constitution and *criminal laws* of the State of Oregon." (Emphasis supplied.)

We have been unable to discern an explanation for the change from subject to "laws" and "general laws" to subject to the "criminal laws." We are left, however, with the inescapable conclusion that the voters who adopted Article XI, section 2 envisioned a stricter limitation on the lawmaking power of cities in respect of criminal laws than with regard to civil or regulatory measures. Thus, the same interpretation and assumptions of compatibility found in civil and regulatory areas cannot be applied in evaluating the relationship between state and municipal criminal laws.

Since 1906, only a few reported cases have addressed the validity of local *criminal* provisions alleged to have been in conflict with state law, wherein the meaning of Article XI, section 2 has been raised and analyzed. The City cites *Portland v. Parker,* 69 Or 271, 138 P 852 (1914), which we do not find particularly helpful because this court relied, in part, upon the fact that the city vagrancy ordinance at issue in that

case was enacted in 1904, prior to the adoption of the home rule amendments in 1906. This court said that, because the ordinance had not been amended or changed since 1904, the home rule amendment did not impliedly repeal it. This court also found no legislative intent to repeal local vagrancy ordinances in the state vagrancy law enacted in 1911.

Defendant has contended throughout this proceeding that Article XI, section 2, of the Oregon Constitution and the Oregon Criminal Code of 1971 prohibit the enactment by cities of any ordinance that duplicates, contradicts or amends in any way the provisions of a state criminal statute. Defendant's exhaustive briefs and supplemental memorandum show nothing in the history of the home rule amendments or in the cases decided close in time to the adoption of Article XI, section 2 to indicate that the voters then contemplated that the legislature, by enacting a criminal statute, would occupy the whole field of legislation upon that subject. Nothing we find evinces the intent to exclude, for example, identical local ordinances which punish the same conduct in municipal courts that is punished by state criminal law. *See, e.g., Portland v. Parker, supra; Harlow v. Clow,* 110 Or 257, 223 P 541 (1924), *overruled on other grounds, Landreth v. Gladden,* 213 Or 205, 324 P2d 475 (1958).

The issue of compatibility between state and city criminal laws was addressed in *Harlow v. Clow, supra,* where the trial court held a City of Klamath Falls vagrancy ordinance invalid under Article XI, section 2 because it conflicted with the state statute defining and punishing vagrancy. This court analyzed Article XI, section 2 and reversed the trial court, stating:

> "The constitutional provision [Article XI, section 2] prohibits a municipality from enacting legislation making that lawful which the state has denounced as a crime. The amendment strikes at conflicting laws, not at acts that are in harmony." 110 Or at 263.

The court compared the statute and ordinance and found them not in conflict, but in "perfect harmony," stating:

> "Every act constituting vagrancy under the city ordinance is likewise deemed vagrancy by the state statute, and *vice versa.* The city ordinance is a duplicate of the state statute,

except that the penalty prescribed by the ordinance is smaller than that prescribed by statute." 110 Or at 263.

The court quoted *Portland v. Parker, supra,* for the following observation:

"There is nothing in the city ordinance that conflicts with the state law except that the punishment upon conviction in the municipal court may be somewhat lighter than upon conviction in the state court. But, from the very earliest judicial history of the state, the law has provided that persons convicted in justices' courts of assaults and other like offenses may be punished by a fine, or by a small fine and imprisonment, while, if convicted of a like affair in the circuit courts, the punishment is much greater." 110 Or at 265, quoting 69 Or at 275.

Although *Harlow* was specifically concerned with the defining elements of the crime of vagrancy, language in that case suggests that Article XI, section 2 does not require local criminal punishment of the same conduct to be identical to the punishment prescribed by state law. A fair reading of *Harlow* is that some latitude exists for differences, but not for incompatibility, between local and state criminal penalties. *Harlow* and *Parker* both suggest that local ordinances may punish the same criminal conduct more leniently than state law. However, nothing in these cases suggests that local punishment can exceed the penalties prescribed by state law.

Although there are several other cases wherein the validity of a city *criminal* ordinance was tested against state law, under Article XI, section 2, we have found none where the relative severity of the penalty provisions was a material factor the court considered in analyzing the compatibility of the ordinance with state law.[7]

Defendant contends that the criminal law revision of 1971 indicated a clear legislative intent exclusively to occupy

---

[7] *See, e.g., Miller v. Hansen,* 126 Or 297, 269 P 864 (1928), where the validity of a city ordinance prohibiting the possession of intoxicating liquors within the city limits was upheld under Article XI, section 2, and *Winters v. Bisaillon,* 152 Or 578, 54 P2d 1169 (1936), where a city ordinance fixing the speed limit for motor vehicles within the city limits was held to conflict with the state statute requiring reasonable speed under the circumstances (the basic rule).

the field of criminal law.[8] There is some support for defendant's position in ORS 161.035(2), which by its terms states that the Oregon Criminal Code of 1971 governs the "construction of and punishment for any offense defined outside [the Code]." We have reviewed the text and legislative history of the Oregon Criminal Code of 1971, however, and do not believe that ORS 161.035(2) was intended to apply to offenses defined by cities.

■ The Oregon Criminal Code contains at least one textual reference to municipal criminal ordinances. ORS 161.505 specifically defines "offense" as "conduct for which a sentence to a term of imprisonment or to a fine is provided * * * by any *law or ordinance of a political subdivision of this state.*" (Emphasis supplied.) ORS 46.047, which is outside the criminal code but was enacted subsequent to it (Or Laws 1975, ch 611, § 15), also contemplates municipal criminal ordinances. It provides:

> "When an *offense defined by municipal ordinance* is tried in district court, it shall be subject to the same statutes and procedures that govern the trial and appeal of a like offense defined by a statute of this state." (Emphasis supplied.)

See also ORS 221.349, 221.350, 221.360 and 221.390, which have been amended since 1971 and discuss prosecutions for crimes or offenses defined and made punishable by city charter or ordinance. Thus, we are not persuaded that the legislature in 1971 intended totally to exclude cities from enacting ordinances in the area of criminal law.

In *LaGrande/Astoria v. PERB,* 281 Or 137, 576 P2d 1204, *adhered to on rehearing,* 284 Or 173, 586 P2d 765 (1978), we considered at some length the historical reasons for the adoption of the home rule amendments. In that case we said:

> "Outside the context of laws prescribing the modes of local government, both municipalities and the state legislature in many cases have enacted laws in pursuit of substantive objectives, each well within its respective authority, that were arguably inconsistent with one another. In such cases, the first inquiry must be whether the local rule in truth is incompatible with the legislative policy, either because both

---

[8] ORS 167.007, which prohibits prostitution, and the applicable penalty provisions, ORS 161.615 and 161.635, were enacted as part of the criminal code revision (Or Laws 1971, ch 743, §§ 250, 275 and 277).

cannot operate concurrently or because the legislature meant its law to be exclusive. It is reasonable to interpret local enactments, if possible, to be intended to function consistently with state laws, and equally reasonable to assume that the legislature does not mean to displace local civil or administrative regulation[18] of local conditions by a statewide law unless that intention is apparent. * * * However, when a local enactment is found incompatible with a state law in an area of substantive policy, the state law will displace the local rule.

---

"18
   "*The reservation in article XI, section 2, supra, regarding state criminal law reverses this assumption with respect to such laws.*" 281 Or at 148. (Emphasis supplied; citations omitted.)

The essential test for displacement of local ordinances (civil or criminal) by state law is whether the local rule is "incompatible with the legislative policy, either because both cannot operate concurrently or because the legislature meant its law to be exclusive." 281 Or at 148. In the area of civil or administrative ordinances regulating local conditions, it is reasonable to assume that the legislature did not mean to displace local ordinances, unless that intention is apparent. *See, e.g., State ex rel Haley v. City of Troutdale,* 281 Or 203, 576 P2d 1238 (1978) (finding no manifest legislative intent to exclude local provisions which "supplemented" the state building code). The reservation in Article XI, section 2, however, reverses this assumption with respect to state criminal law.

The analysis of compatibility begins then with the assumption that state *criminal* law displaces conflicting local ordinances which prohibit and punish the same conduct, absent an apparent legislative intent to the contrary. The parties have cited nothing in the text or legislative history of the state laws regarding prostitution, nor have we found anything, to indicate that the state intended cities to be authorized to enact inconsistent local laws in this area.

The inquiry does not end here, of course, because we have yet to decide how much symmetry between state and city criminal laws is required by Article XI, section 2, so as not to be in conflict. *Harlow v. Clow, supra,* a case decided relatively close in time to the adoption of Article XI, section 2, suggests that, in order that the defining elements of a city's crime not

conflict with state law, they must virtually "duplicate" the state law elements. We state the rule that in determining whether the defining and prohibiting provisions of a city criminal ordinance conflict with a state criminal statute, the test is whether the ordinance prohibits an act which the statute permits, or permits an act which the statute prohibits.[9] *See, e.g., Harlow v. Clow, supra,* 110 Or at 263. This test has been met by the city ordinance here at issue defining and prohibiting prostitution.

As to the requisite symmetry of state and city criminal *penalty* provisions, we again turn to *Harlow v. Clow, supra,* for the proposition that, until the legislature intends otherwise and so indicates, city punishment of the same conduct made criminal by state law may be "lighter" than that prescribed by state statute. However, a city penalty that is greater than the state prescribed penalty (minimum or maximum) for the same criminal conduct is incompatible with that state penalty and must fall. Nothing in the text or legislative history of the Oregon Criminal Code of 1971 contradicts this.

■    Thus, under Article XI, section 2, while a city has some leeway between the state prescribed minimum and maximum criminal penalties, without evidence of legislative acquiescence, a city ordinance cannot increase either the minimum or the maximum penalty that is authorized by state law for the same criminal conduct.

■    The punishment for a conviction of prostitution under state law is established as a range between a minimum sentence of discharge (ORS 137.010(5)(d)) and a maximum sentence of one year imprisonment and a $2,500 fine (ORS 161.615, 161.635). The City argues that its mandatory minimum penalty scheme is not significantly different from the

---

[9] The inquiry is more complicated when the legislature has repealed a criminal statute or expressly decriminalized certain conduct. *See, e.g.,* the repeal of the crimes of adultery (*former* ORS 167.005) and lewd cohabitation (*former* ORS 167.015) by Oregon Laws 1971, chapter 743, and the decriminalization of the unlawful possession of less than one ounce of marijuana (ORS 475.992(4)(f)). The assumption, which flows from Article XI, section 2, that the legislature intended to displace conflicting local criminal ordinances, absent apparent legislative intent to the contrary, does not apply when there is no state criminal law on the subject. A court would have to ascertain whether the legislature, by repealing a statute or decriminalizing certain conduct, intended also to preclude local prohibition and punishment of that conduct.

state law penalty, because the mandatory minimum penalties are within the range prescribed by state law. The difference between a law that authorizes a range of sentences and a law that mandates a particular one is significant. The City's mandatory minimums for prostitution are harsher than the state's minimum penalty for the same offense. Thus, we hold the City's mandatory minimum penalty provision, as applied to the crime of prostitution, is invalid.

Article XI, section 2, as here interpreted, does not deny cities the power to regulate conduct otherwise within the reach of local authority. The present decision limits only the cities' use of "criminal laws" within the meaning of Article XI, section 2. As long as a city ordinance employs civil or administrative procedures and sanctions lacking punitive significance, *see Brown v. Multnomah County Dist. Ct.,* 280 Or 95, 105, 570 P2d 52 (1977), the validity of the ordinance must meet only the tests stated in *LaGrande/Astoria v. PERB, supra,* for substantive city policies generally, rather than the more stringent constraints of the phrase in Article XI, section 2, that expresses the dominance of state criminal laws over the creation and punishment of local criminal offenses.[10]

## SEVERABILITY OF INVALID PENALTY PROVISION

The next question we must consider is whether our conclusion that the City's mandatory minimum penalty provision for prostitution is invalid requires dismissal of the complaint against defendant. The trial court concluded that the City's prohibitory ordinance could not stand without the applicable mandatory minimum penalty provision. Although neither party has addressed this issue, we conclude, as did the Court of Appeals, that the invalid mandatory minimum penalty section is severable.

■ This court has long recognized the principle of statutory construction that the unconstitutional part of a statute may be excised without destroying a separable part. *See, e.g., Ivancie v. Thornton,* 250 Or 550, 443 P2d 612, *cert den* 393 US 1018 (1968); *Dilger v. School District 24CJ,* 222 Or 108, 119, 352 P2d 564 (1960). The principle of severability applies where the part of the statute which must be stricken is a

---

[10] *See* Platt, *An Odd Couple: The Criminal Sanction and the Municipal Ordinance,* 7 Will L J 43, 70-72 (1971).

penalty provision. *Dilger v. School District 24CJ, supra,* 222 Or at 120.

For acts of the Legislative Assembly, this principle has been codified at ORS 174.040, which provides:

"It shall be considered that it is the legislative intent, in the enactment of any statute, that if any part of the statute is held unconstitutional, the remaining part shall remain in force unless:

"(1) The statute provides otherwise;

"(2) The remaining parts are so essentially and insepara- bly connected with and dependent upon the unconstitutional part that it is apparent that the remaining parts would not have been enacted without the unconstitutional part; or

"(3) The remaining parts, standing alone, are incomplete and incapable of being executed in accordance with the legislative intent."

This principle has also been applied to a city ordi- nance. *Ivancie v. Thornton, supra,* 250 Or at 554. The same analysis should be employed to determine whether part of an ordinance, if held to be unconstitutional, should be severed from the remaining parts. In the instant case, nothing in the text of the city ordinances at issue indicates that the City Council intended, if the mandatory minimum were held to be unconstitutional, that the provision defining and prohibiting prostitution would be invalid. In fact, the two provisions are in separate chapters of the City Code.[11]

Although the two provisions were proposed and enacted as "a package,"[12] the prohibitory ordinance is not so essentially and inseparably connected with and dependent upon the mandatory minimum penalty provision, that it is apparent from the text or the legislative history that it would not have been enacted without the mandatory minimum provision. Finally, the prohibitory ordinance is neither incomplete nor incapable of being executed absent the man- datory minimum provision because, upon conviction, a defen- dant could be sentenced to the penalty provided for in the

---

[11] The mandatory minimum provision is in chapter 14.08 "Enforcement"; the prohibitory ordinance is in chapter 14.36 "Business Regulations."

[12] Minutes, Portland City Council (June 23, 1983 — testimony of Commissioner Schwab).

general penalty provision applicable to the City Code, section 14.08.020.[13]

Thus, after the trial court declared the mandatory minimum penalty provision invalid, it erred in dismissing the complaint. Defendant could have been tried and, if convicted, punished pursuant to section 14.08.020 of the City Code.

The decision of the Court of Appeals is affirmed.

---

[13] Section 14.08.020 of the Code of the City of Portland provides:

"Violation of any provision of this Code is punishable, upon conviction, by a fine of not more than $500, or by imprisonment not exceeding 6 months, or both. However, no greater penalty shall be imposed than the penalty prescribed by Oregon statute for the same act or omission."